(636 P.2d 242)

No. 52,971

RICHARD H. LONG, JR., *Appellee,* v. BONNIE K. BROOKS, nee LONG, *Appellant.*

Opinion filed November 25, 1981.

*Jim Lawing,* of Wichita, for the appellant.

*Clay Cox,* of Wichita, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BULLOCK, J.: After three years of marriage, Richard H. Long, Jr. sued his wife Bonnie for divorce on grounds of incompatibility. As part of that proceeding, the parties entered into an agreement covering, among other things, the payment of their debts and the division of their property. The provision of that agreement pertinent to this lawsuit reads:

"Bonnie K. Long shall assume the financial obligations with the Southwest National Bank, Dr. Don George, Sears and the attorney fees for Richard H. Long, Jr.'s attorney in the sum of $200.00 and hold Richard H. Long, Jr. harmless from payment of same."

In the divorce decree filed on September 27, 1973, the court found "that the rights, remedies and obligations of the parties contained in said agreement are fair and reasonable, and should be approved and ratified in all respects." Based upon this finding

the court entered the following order: "The parties are hereby directed and ordered to comply in all respects with the terms of said agreement." The property division agreed to by the parties was then made an order of the court and custody of the couple's child was awarded to Bonnie.

For reasons not detailed in the decision below, *Richard* paid the obligations to Southwest National Bank and Sears in 1976 and 1977. The next court involvement with the case occurred on March 3, 1977, when the trial judge entered an order, on the joint motion of the parties, to transfer custody of the child to Richard. No further legal proceedings occurred until June 20, 1979, when Richard filed an affidavit in contempt alleging Bonnie had complied with neither the March, 1977 custody order nor the September, 1973 decree ordering Bonnie to pay the debts previously mentioned. On March 21, 1980, Bonnie was found in contempt of the court's prior orders. In lieu of the imposition of sentence, Bonnie was given the opportunity to purge herself of the contempt by reimbursing Richard at the rate of $100.00 per month for the sums he had paid to the Bank and Sears.

Bonnie moved for an amendment to that part of the court's March, 1980 contempt order relating to the parties' debts on the grounds that the judgment contained in the divorce decree was dormant. The trial court, in an order entered in December, 1980, found the agreement containing the agreement to pay debts constituted a contract which Bonnie had breached by not paying the obligations assigned to her, but that the judgment (the divorce decree) pertaining to the obligation to pay debts did not become effective until 1980 when it was reduced to a sum certain. Alternatively, the court concluded, even if the judgment were dormant, Bonnie had waived, was estopped, or was barred by laches from asserting the defense of dormancy because she had not raised the same in the original contempt hearing. On the basis of these conclusions, the finding of contempt and the conditions for purging were confirmed.

The significant questions presented by this appeal, as we view it, are four:

1. Did the terms of the property settlement agreement of the parties become a judgment of the court upon confirmation by the decree of divorce?

2. If the agreement became a judgment, is the provision

requiring Bonnie to pay the Bank and Sears a judgment in favor of Richard?

3. If the decree is a judgment, and one in Richard's favor, did it grow dormant for want of enforcement for five years and did it become wholly extinguished when no motion for revivor and request for execution, attachment or garnishment was filed within two years thereafter?

4. If the order to pay the Bank and Sears is a judgment in Richard's favor which has become extinguished for want of enforcement and revivor, can Bonnie now be punished for contempt for failing to comply with that judgment?

The first three questions have been previously decided in our law. The last, insofar as we can determine, is one of first impression. We shall deal with the questions in the order presented:

1. K.S.A. 1973 Supp. 60-1610(*d*) (now [*f*] L. 1981, ch. 236), in effect when the divorce decree at issue here was entered, requires that every property settlement agreement "*shall* be incorporated in the decree." The effect of this incorporation was settled in 1972 with the decision of *In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56 (1972). In that case the supreme court held that although the agreement retains its characteristics as a contract, it also becomes a judgment of the court—"a hybrid in the law." 210 Kan. at 224. Thus, we conclude that the property settlement agreement in the case at bar, although also a contract, became a judgment upon its confirmation in the divorce decree.

2. In *Fiske v. Fiske,* 218 Kan. 132, 542 P.2d 284 (1975), the husband agreed, as part of a property settlement agreement, later incorporated into the decree, to make the bank payments on the wife's house trailer. When he fell behind in the payments, the wife sought to garnish his wages. The husband moved to dismiss, arguing there was no judgment on which to base the garnishment. After commenting on the rule that confirmation of a property settlement agreement makes that agreement also a judgment, the court, without discussion, held that the *wife* had a judgment for the bank payments which was immediately enforceable by garnishment. We find *Fiske* indistinguishable from the case before us and, therefore, conclude the provisions of the agreement relating to the payment of the Bank and Sears bills by Bonnie constitute a judgment in Richard's favor, and that this judgment,

contrary to the views of the court below, was effective from the date the decree was entered in 1973.

3. The questions relating to the dormancy and extinguishment of Kansas judgments, presented by this appeal, were effectively determined by this court in *Clark v. Glazer,* 4 Kan. App. 2d 658, 609 P.2d 1177 (1980). In that case we said that, pursuant to K.S.A. 60-2403, judgments grow dormant in five years, if not enforced by execution, garnishment or proceeding in aid of execution; and, if not revived, as provided in K.S.A. 60-2404, such dormant judgments become absolutely extinguished and unenforceable two years thereafter. *Glazer* makes plain that *nothing* other than revivor under K.S.A. 60-2404 can serve to revitalize a dormant judgment and that, once the period for revivor passes, there is absolutely nothing left of that judgment to which even "equitable principles could be applied." 4 Kan. App. 2d at 661. A review of K.S.A. 60-2404 reveals that revivor of dormant judgments can *only* be accomplished by a combination of (1) a motion for revivor, coupled with (2) a request for the immediate issuance of an execution, garnishment or attachment. Accordingly, we are obliged to conclude, again contrary to the result reached below, that, in the case at bar, neither Richard's affidavit in contempt (filed in the sixth year following the entry of the judgment) nor Bonnie's failure to raise the dormancy of the judgment in the original contempt proceeding (held in the seventh year of the dormant and unrevived judgment) were sufficient to revive the judgment contained in the divorce decree.

4. Having concluded that Richard's judgment for the payment of the bills to the Bank and Sears was dormant and unrevived at the time Bonnie was held in contempt and noting that the judgment is now totally extinguished, having *never* been revived by Richard within the time permitted by K.S.A. 60-2404, we turn at last to a consideration of the trial court's final December, 1980 order finding Bonnie in contempt for failing to comply with the extinguished judgment. We are cited to no authority concerning whether one can be lawfully held in contempt for failing to pay an extinguished judgment. Logic, however, dictates that the answer is no. The instant action provides ample illustration. Here, although Bonnie no longer owes the money covered by the extinguished judgment and although there is *nothing* Richard can do to revive that obligation, the trial court ordered Bonnie to pay it or go to jail. If this order stands, Richard acquires by indirec-

tion that which the law, because of his own neglect, would deny him directly.

Such a result is neither logical, reasonable nor fair, especially when it is compelled solely by means of a threat of incarceration. Accordingly, we hold that it is not lawful to punish by contempt the failure to pay an extinguished judgment. The order of the trial court below is reversed and this cause remanded with instructions to dismiss the proceeding in contempt insofar as it relates to the failure of Bonnie to pay the two bills in question.