(779 P.2d 442)

No. 62,915

WICHITA FEDERAL SAVINGS AND LOAN ASSOCIATION, *Appellant*, v. NORTH ROCK ROAD LIMITED PARTNERSHIP, *et al.*, *Appellees*.

Petition for review denied November 7, 1989.

Opinion filed August 25, 1989.

*David Michael Rapp*, of Hinkle, Eberhardt & Elkouri, of Wichita, and *Geary N. Gorup*, of The Law Offices of Leslie F. Hulnick, P.A., of Wichita, for the appellant.

*Clifford L. Bertholf*, of Wichita, for the appellees.

Before RULON, P.J., LARSON and LEWIS, JJ.

LARSON, J.: Columbian National Title Insurance Company (Columbian Title) appeals the trial court's ruling that a judgment

lien attached to the judgment debtor's after-acquired real property and had not become dormant.

Although the critical issues involve the priority and validity of a judgment, this case began as a mortgage foreclosure brought by Wichita Federal Savings and Loan Association (Wichita Federal) on Sedgwick County real estate used to secure indebtedness owned by North Rock Road Limited Partnership (North Rock Road).

Angelina Jiminez, formerly Angelina Brown, filed an answer and counterclaim based upon a judgment which she obtained in a divorce action against her former husband, LaVern L. Brown, who was North Rock Road's predecessor in title.

The real estate involved in the foreclosure action was not owned by either Jiminez or Brown at the time the divorce decree was granted. Jiminez alleged that when Brown subsequently acquired title to the property her judgment lien attached and was prior to the mortgage which North Rock Road later granted to Wichita Federal.

Columbian Title intervened based on a title insurance policy showing no liens which it issued to Wichita Federal at the time the mortgage indebtedness was incurred. The claims of all of the other parties were resolved and the controversy between Jiminez and Columbian Title was tried upon a stipulated set of facts.

The trial court determined the unsatisfied divorce judgment attached to Brown's after-acquired property, which gave the judgment lien priority over the Wichita Federal mortgage.

*Jiminez's judgment lien attached to Brown's after-acquired real property.*

When a case has been submitted to the trial court on stipulated facts, the appellate court is afforded the same opportunity to consider the evidence as the court below. *H. Freeman & Son v. Henry's, Inc.*, 239 Kan. 161, 162, 717 P.2d 1049 (1986).

The journal entry in the Brown divorce case was filed April 6, 1977. It required payment of alimony from April 1977 through July 1, 1981. It also gave Jiminez a property division judgment against Brown for $31,600 payable in fifteen semi-annual installments of $2,250 commencing May 1, 1981, and payable on October 31 and May 1 of succeeding years until paid in full. Brown had the right to pay any part or all of the judgment

without penalty. Interest on the judgment commenced May 1, 1981, at 8% per annum. The judgment was entered by agreement and contained the following statement: "The above judgment shall be a lien upon all real estate granted to the Defendant herein and shall continue to be a lien until such time as paid in full by the Defendant or expressly waived by the Plaintiff in writing."

Brown obtained title to the subject property on February 12, 1981, and conveyed it to North Rock Road on November 15, 1983.

Columbian Title admits that *Babcock v. Jones*, 15 Kan. 296, 302 (1875), held that judgment liens attach to after-acquired property but argues that, because the Kansas rule was adopted long before the creation of what is now K.S.A. 1988 Supp. 60-2202(a), the question is still open in Kansas. Columbian Title also contends that, because the agreed wording of the divorce decree made the judgment a lien on real property then owned, the lien did not attach to after-acquired property. We do not agree with either contention.

Although no Kansas case has recently so stated, *Plumb v. Bay*, 18 Kan. 415, 418 (1877); *Bliss v. Brown*, 78 Kan. 467, 96 Pac. 945 (1908); and *Leslie v. Bank*, 97 Kan. 22, 25, 154 Pac. 225 (1916), all state that a judgment lien attaches to after-acquired real property, a rule which we hold continues to date.

K.S.A. 1988 Supp. 60-2202(a) in applicable parts states:

"Any judgment rendered in this state . . . shall be a lien on the real estate of the debtor within the county in which judgment is rendered. Except as provided in subsection (c), the lien shall be effective from the time at which the petition stating the claim against the judgment debtor was filed but not to exceed four months prior to the entry of the judgment."

This section is virtually identical to G.S. 1949, 60-3126, except the effective date was changed from the first date of the term in which the judgment is rendered to the earlier of the filing of the claim or four months prior to the entry of the judgment. Although no Kansas case has specifically so stated, we hold the rule that a judgment lien attaches automatically to after-acquired property was not altered by the enactment of 60-2202. With the exception of Pennsylvania and Ohio, most states hold that judgment liens attach to after-acquired real property whether or not the statute so provides. See *United States v. Taft*, 44 F. Supp. 564, 568 (S.D. Cal. 1942).

K.S.A. 60-2202 was construed in *Bohl v. Bohl*, 234 Kan. 227, 231, 670 P.2d 1344 (1983), as imposing a lien upon a judgment debtor's real estate, at the latest, on the date of the decree. Any distinction between a judgment for alimony and a property division was deemed irrelevant in *Bohl* when considering the imposition of the lien.

The Kansas Supreme Court, in *Fiske v. Fiske*, 218 Kan. 132, 542 P.2d 284 (1975), specifically found that all separation agreements which are found to be fair, just, and equitable by the trial court are merged into the divorce decree and become judgments when entered by the trial court. The *Brown* journal entry of judgment stated "the division of property . . . shall be considered orders of the court just the same as if each finding was completely set forth herein as an order and judgment of the court." The lien of the *Brown* judgment came into existence as of the filing of the divorce decree.

Jiminez's judgment lien attached to Brown's after-acquired property as well as that property owned at the time of the divorce.

*Jiminez was not required to take any action for her judgment lien to attach to Brown's after-acquired property.*

It was not necessary for Jiminez to take any action to cause her judgment lien to attach to Brown's after-acquired property. Under *Leslie v. Bank*, 97 Kan. 22, our Kansas Supreme Court specifically held that a judgment lien attached to the judgment debtor's interest in the land as soon as he received it and remained an incumbrance notwithstanding his vesting of title in a third party. 97 Kan. at 25.

Columbian Title cites North Dakota and Missouri cases which deal with priority of competing judgment liens which are not applicable here. A judgment lien gives the judgment creditor priority over other interests acquired after the judgment lien attaches. The Kansas Supreme Court has stated:

"A judgment lien operates to give the judgment creditor priority over other adverse interests subsequently acquired and precludes the subsequent disposal or encumbrance of the property from operating to prejudice the judgment creditor. (46 Am. Jur. 2d, Judgments, § 243, p. 472, *Shinn v. Shinn*, 42 Kan. 1, 21 Pac. 813.)" *Jackson & Scherer, Inc. v. Washburn*, 209 Kan. 321, 329, 496 P.2d 1358 (1972).

*The lien extends to the entire amount of the judgment, not just*

*to the amount of the judgment due and owing at the time Brown conveyed the subject property to North Rock Road.*

Columbian Title also argues that the judgment lien does not extend to the full value of the $31,600 property division judgment. This contention asks us to apply the ruling of *Brieger v. Brieger*, 197 Kan. 756, 421 P.2d 1 (1966), that a judgment against a parent for periodic payments for the support of a child is a lien against the real property of the parent only to the extent of the payments due and delinquent at the time of the sale of the property by the judgment debtor and not as to future payments that have not then become due. We decline to so rule.

A judgment for child support is subject to modification and future change while the judgment granted by the divorce decree to Jiminez against Brown was for a fixed sum.

In *Stoner v. Stoner*, 134 Kan. 356, 5 P.2d 847 (1931), the district court, as a part of division of property, ordered Mr. Stoner to pay $1,625 to Mrs. Stoner at the rate of $25 per month and placed a lien on his property. When Mr. Stoner failed to pay, Mrs. Stoner attempted to foreclose her lien. The court held that, although she could foreclose only on those payments that were due and unpaid, the judgment was final and the lien secured payment of the entire amount of the judgment. The court stated:

"The judgment being final, the claim of Mrs. Stoner for the unpaid payments is her property, and subject to assignment and other disposition as such. It, of course, may be enforced from time to time as defaults occur. The provision of the decree ordering payments in installments did not take from it the character of finality nor destroy the lien imposed by the court to secure payments of all the installments." 134 Kan. at 360.

All the installments of the judgment herein are subject to and protected by the judgment lien. The judgment lien in its entire amount attached to the subject property on the date it was acquired by Brown. The judgment lien has priority in time and for the full amount of the judgment over the later obtained mortgage lien.

*The judgment lien of the divorce decree did not become dormant.*

Columbian Title finally argues that, since execution or other legal process for collection was not commenced within five years of the entry of the divorce decree, the judgment lien became dormant and unenforceable under K.S.A. 1988 Supp. 60-2403, which in applicable part provides:

"If execution, including any garnishment proceeding, income withholding proceeding or proceeding in aid of execution, is not issued within five years from the date of any judgment rendered in any court of record in this state including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving such judgment, or if five years have intervened between the date of the last execution issued on such judgment and the time of issuing another writ of execution on it, such judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

No writ of execution pursuant to K.S.A. 60-2401 was issued at the request of Jiminez, whose only action to enforce the judgment was a garnishment issued November 30, 1984. No motion was filed to revive a dormant judgment as allowed by K.S.A. 1988 Supp. 60-2404. Columbian Title contends it is inconsistent and contradictory for Jiminez to argue the lien existed at the time of the divorce in 1977 and then contend that, because of the installment payments on the property settlement, each should be treated as individual judgments which accrue as of the date they become due.

Columbian Title asks us to apply the same rule here as applies to installment payments for child support, which become final judgments when due and may be enforced like any other judgments. It contends there is no exception in the dormancy statute which would protect the Jiminez judgment from being extinguished for failure to comply with that statute. *Dallas v. Dallas*, 236 Kan. 92, 94, 689 P.2d 1184 (1984).

Columbian Title's argument might have validity had the Jiminez judgment been subject to immediate execution, but the earliest a payment was due was May 1, 1981. Numerous payments were made on the judgment in 1981, 1982, 1983, and 1984, and on November 30, 1984, a garnishment was filed, which was within five years of the date the first payment was due.

The time within which a judgment must be enforced to prevent it from becoming dormant does not run during any period in which it is impossible to enforce the judgment by legal process. This general principal has been stated as follows: "Such statute will not run against a judgment . . . during any time it is impossible to enforce it by final process." 49 C.J.S., Judgments § 532, p. 985.

Kansas courts have long held that a judgment for periodic child support and alimony payable in installments does not become

dormant five years after the journal entry is filed. The dormancy period begins to run when each installment becomes due and it is possible to collect it by legal process. The Kansas Supreme Court has stated:

"It suffices to say that commencing with *Sharp v Sharp*, 154 Kan. 175, 117 P.2d 561, this court in clear and unequivocal language announced the rule that installments, decreed in a divorce action, for support and education of the minor children of a marriage, when due and unpaid, become final judgments which may be collected as other judgments and that the statute of limitations begins to run on each of such installments from the period fixed for the payment thereof as it became due. Indicating the reasons for its conclusion this court, in the opinion, said that inasmuch as courts do not have power to modify or change such past due installments it was convinced they could be collected by suit, judgment and execution, the same as past due unpaid alimony installments or other judgments." *Haynes v. Haynes*, 168 Kan. 219, 223-24, 212 P.2d 312 (1949).

We hold the same rules that apply to alimony or child support installments also apply to a judgment for a division of property which is payable in installments commencing in the future and payable over a term of years.

Kansas strictly construed dormancy/revivor statutes in *Clark v. Glazer*, 4 Kan. App. 2d 658, 609 P.2d 1177 (1980). There our court held that when a party at all times had a legal right to seek enforcement of a judgment, the dormancy period was running. In the present case, under the strictest interpretation, there would have been no right for an execution to levy until May 31, 1981, and timely permissible action took place within five years of that date, which prevented dormancy.

An execution and garnishment or other legal process attempting collection would not only have been purposeless conduct, which Kansas has expressly not required (see *Carpenter v. Riley*, 234 Kan. 758, 762, 675 P.2d 900 [1984]), it might have subjected Jiminez to liability for wrongful conduct. As to the judgment payable in installments, the dormancy period commenced as to each installment when it became due and was collectable by execution or other legal process. The judgment did not become dormant and legal action was taken within the necessary period so that the judgment remained in full force and effect.

Affirmed.