(850 P.2d 939)

No. 67,159

RESOLUTION TRUST CORPORATION, *Appellee,* v. EDWARD O. BOPP, *et al., Appellants.*

Opinion filed April 23, 1993.

*Michael S. Martin,* of Overland Park, for appellants.

*Robert L. Hamann* and *Timothy M. Henderson,* of Hamann, Holman, South, McCollum & Hansen, P.C., of Prairie Village, for appellee.

Before GERNON, P.J., ELLIOTT, J., and RICHARD W. WAHL, District Judge Retired, assigned.

GERNON, J.: The trustees of the Perry M. Sharp Trust appeal a decision of the trial court which found that the Resolution Trust Corporation (RTC) has a purchase money security interest in property that has priority over their judicial lien.

This case originated as a mortgage foreclosure action brought by Anchor Savings Association (Anchor) against Edward O. Bopp and H. Earlene Bopp. RTC was later substituted for Anchor.

On July 6, 1988, the Bopps secured a loan from Anchor in the amount of $146,850. The money was to be used to purchase property and construct a residence on that property pursuant to an agreement between the Bopps and Robert J. and Janet L. Manson. In return, the Bopps gave Anchor a mortgage in the property to secure the loan. The price of the land was $39,000. The district court found that most of the remainder of the loan was used in the construction of the residence on the land. On October 13, 1988, the trustees of the Perry M. Sharp Trust obtained a judgment against the Bopps in Johnson County District Court. They were granted a judgment lien against the property

pursuant to K.S.A. 60-2202, which judgment became effective from June 13, 1988.

The Bopps defaulted on their loan payments, leaving the house 85 to 95 percent finished. Anchor sought to foreclose on the loan. The trustees counterclaimed, seeking a foreclosure of their judgment lien and a determination that their interest had priority over Anchor's interest.

The district court found that the mortgage to Anchor was a purchase money mortgage under K.S.A. 58-2305, and, therefore, Anchor was entitled to priority over the trustees' judgment lien to the full extent of the loan. The district court stated that dividing the purchase money loaned and subjecting the construction part of the loan to the trustees' lien would discourage economic activity and give the trustees a windfall while denying the lender its anticipated security. The trustees appeal.

The trustees claim that K.S.A. 58-2305 only pertains to that part of the loan used to buy the land and that the part of the loan used to build the residence on the land should not be considered purchase money. RTC counters that, since the purchase of the property and the construction of the residence were all part of the same transaction, the whole loan was for purchase money.

This case was presented to this court on stipulated facts. Therefore, our standard of review is de novo, and we may review both facts and law. *H. Freeman & Son v. Henry's, Inc.*, 239 Kan. 161, 162, 717 P.2d 1049 (1986).

K.S.A. 58-2305 states that a mortgage given by a purchaser to secure purchase money has priority over a prior judgment against the purchaser. On the other hand, a judgment lien attaches to after-acquired property automatically, giving the judgment creditor priority over subsequent interests. *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, 680, 779 P.2d 442, *rev. denied* 245 Kan. 788 (1989).

Here we must decide whether the purchase money mortgage priority pertains to the money actually used to purchase the land, or whether it extends to funds from the mortgage used to construct improvements on the property. We can find only one case in which the Kansas Supreme Court has divided a mortgage where only part of the mortgage secured the land. In *Pratt v.*

*Topeka Bank*, 12 Kan. *570, *571-72 (1874), the portion of the mortgage not used for the land was used to secure personal property rather than improvements on the land. The mortgage in *Pratt* was a result of consolidation of several notes, one of which was for crops growing on the land at the time of the conveyance and a reaper. Also, the crops and the reaper were not valued separately. Although touching on the issue, the *Pratt* case bears little resemblance to the fact situation here.

Missouri addressed the issue in *Westinghouse Elec. Co. v. Vann Realty Co.*, 568 S.W.2d 777 (Mo. 1978). The Missouri court found that, where part of the mortgage secured the purchase price of the land and part of the mortgage secured apartment buildings that were to be constructed on the land, the part of the mortgage that purchased the land was purchase money, but the rest was not. New York reached the same basic conclusion in *Syracuse Savings & Loan Association v. Hass*, 134 Misc. 82, 85, 234 N.Y.S. 514 (1929).

Other courts, however, have reached the opposite conclusion. Georgia, for example, in *Hand Trading Company v. Daniels et al.*, 126 Ga. App. 342, 190 S.E.2d 560 (1972), a case factually similar to this case, ruled that a mortgage executed to finance the purchase of land and the construction of a house on that land was a purchase money mortgage and defeated a prior judgment lien. The court stated that, even though no house was constructed on the land at the time of the mortgage, the loan was made for the purpose of purchasing a lot and constructing a house on that lot.

Here, RTC argues that the primary method of securing a construction loan is through a mortgage on the property. RTC contends that to deny construction loans purchase money protection would place too great a burden on lenders, discourage them from making construction loans, or force them in a position of creating duplicate paperwork and piecemeal mortgages, depending upon the stage of construction of a residence or building. To use the instant case as an example, to split the mortgage would deny the lender its expected security interest and would, under modern lending practices, have a chilling effect on this type of business activity.

Here, when Anchor made the loan and took the mortgage on July 6, 1988, the property was not subject to a judicial lien of any kind. It was only after the judgment was rendered against the Bopps on October 13, 1988, that the property was subject to a judicial lien, which related back to a date prior to the Anchor mortgage. Therefore, at the time Anchor made the loan and took the mortgage, the only thing Anchor could have discovered was that a petition had been filed against the Bopps.

From Anchor's viewpoint, all the loan was intended to be used to purchase and improve the real property. The fact that the Bopps did not complete the house prevented its use in this manner. There is no evidence in the record that the money was fraudulently obtained for a purpose other than purchasing and improving the real estate. The lender's expectation was that the entire amount of the loan was to be secured by the purchase money mortgage. Therefore, we conclude that the purchase money protection extends to the construction part of the loan to the extent that such funds are proved to have been actually expended or contracted to have been expended on the residence. To hold otherwise would place a burden upon lenders that would discourage them from making construction loans of any kind. We conclude that the purchase money mortgage protection should extend to money actually used to construct the house or contracted to be expended on it.

Here, the record is void as to the precise amounts expended on the land and construction of the house. Given this, we conclude this matter should be remanded for further proceedings, and the trial court should determine the exact amounts expended for the land and the construction, and what, if any, construction contracts relating to the house have been entered into. The total of these amounts shall be afforded purchase money protection consistent with this opinion.

Remanded.

WAHL, J., dissenting: I respectfully dissent from the majority opinion. It appears to me that the majority opinion places an overly broad construction on K.S.A. 58-2305 and condones commercially unsound practices by lenders.

The very brief statutory statement covering purchase money mortgages is found at K.S.A. 58-2305 and reads: "A mortgage given by a purchaser to secure the payment of purchase money shall have preference over a prior judgment against such purchaser." There is nothing within this statute to cover a priority for future construction costs or any other improvements which the purchaser may wish to place upon the land. It covers only that which is in being when the loan for purchase was obtained. The legislature could easily have included construction costs in the statute, but, not having done so, the addition cannot be judicially grafted upon the statute.

RTC essentially argues that Anchor should not be held to know what the record reflects because it is too much effort and paperwork to find out and that to deny the construction portion of the loan the protection of K.S.A. 58-2305 would have a "chilling effect" on the lending business. This argument is not impressive, and it may well be an attitude which contributed heavily to the savings and loan debacle now facing this nation.

Banks and other commercial lenders have, for years, dealt with the doctrine of lis pendens, K.S.A. 60-2201, and the constructive notice of recorded documents. They simply searched the record to determine the status of their proposed loan. Such a search is not chilling to the lending business. It is not burdensome to the lender or the borrower. It is simply a good business practice which results in sounder loans. Had Anchor searched the records, it would not have found a judgment lien against the lot in question, but it would have found an action pending against its borrower which could ripen into such a lien and which would affect the loan.

Curiously, this issue has not before arisen in Kansas, and not many sister state appellate courts have considered it. Missouri considered it in *Westinghouse Elec. Co. v. Vann Realty Co.*, 568 S.W.2d 777 (Mo. 1978), and held that purchase money protection applied only to the purchase price of the land and not to that part of the mortgage securing costs for buildings to be constructed upon the land. New York reached the same general result in *Syracuse Savings & Loan Association v. Hass*, 134 Misc. 82, 85, 234 N.Y.S. 514 (1929).

Georgia has held otherwise in *Hand Trading Company v. Daniels et al.*, 126 Ga. App. 342, 190 S.E.2d 560 (1972), concluding that, even though no house existed on the lot at the time of the mortgage, the loan was made for the purpose of purchasing the lot and building a house on it.

The Georgia ruling is a boon to lenders who do not wish to search the record, but it totally ignores the rights of prior judgment creditors who made the record. It also opens a door for the borrower-mortgagor to apply part of the loan proceeds to other purposes, as apparently happened in this case.

I would reverse the judgment of the trial court and remand the case with directions to enter judgment for RTC for $39,000, the cost of the land, plus interest, as a purchase money mortgage, and to enter judgment for the trustee of the Perry Sharp Trust for $25,558, with interest and costs, as a second lien on the property sale proceeds.