No. 118,676

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
ERIC G. STROM,
*Appellant*,

and

CHRISTINA A. STROM,
*Appellee*.

SYLLABUS BY THE COURT

1.

K.S.A. 2017 Supp. 60-2403 governs dormancy of judgments.

2.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

3.

K.S.A. 2017 Supp. 60-2403(a) applies to judgments in divorce actions.

4.

Under the facts of this case, the parties agreed in the property settlement agreement that husband would pay the wife monthly installment payments representing one-half of his military retirement pay until the death of either party.

1

5.

Because the length of the marriage was less than 10 years, the military finance center would not recognize the assignment of husband's military retirement pay to the wife. See 10 U.S.C. 1408(d)(2) (2012).

6.

The same rules that apply to alimony and child support installments also apply to a judgment for division of property which is payable in installments commencing in the future and payable over a term of years.

7.

As to a judgment payable in installments, the dormancy period commenced as to each installment when it became due and was collectible by execution or other legal process.

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed January 11, 2019. Affirmed.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellant.

*Bentson Oleen*, of Oleen Law Firm, LLC, of Manhattan, for appellee.

Before BRUNS, P.J., BUSER and SCHROEDER, JJ.

SCHROEDER, J.: As part of his 1995 property settlement agreement approved by the district court, Eric G. Strom agreed to pay his former wife, Christina A. Strom, a portion of his military retirement pay until one of them dies. For reasons not reflected in the record, no payments have been made to Christina for over 22 years. The district court determined the agreement to pay part of Eric's military retirement pay each month created a monthly judgment as each month passed. In doing so, it found the judgments for the last

2

five years enforceable and for years six and seven revived. Eric appeals. We agree with the district court on this point and affirm.

FACTS

Eric and Christina Strom married in 1986 and divorced in 1995. At the time of the divorce, Eric had retired from the military and was receiving military retirement benefits. In the Separation and Property Settlement Agreement (Agreement), Eric agreed to give Christina a portion of his military retirement benefits:

> "**2.10 Military Retirement Pay.** The HUSBAND agrees that during this marriage the WIFE has earned an independent property right to a portion of his military retirement. The HUSBAND agrees that the WIFE should be entitled to receive as her share fifty percent (50%) or Seven Hundred Forty-Three and No/100 Dollars ($743.00) of his military retirement pay, which he is presently receiving, commencing on the first day of the month following the finalization of this divorce for a period of ten (10) years. After July 1, 2005, the WIFE shall be entitled to receive twenty percent (20%) of HUSBAND's military retirement pay.
>
> "The WIFE shall receive by direct payment from the military finance center the amount set forth above less Federal and State Income tax withholding deductions. The HUSBAND agrees to provide any information or documentation the WIFE may need to complete her request for direct payment of disposable military retirement pay from the Military Finance Center.
>
> "Payments to the WIFE shall terminate upon the death of the WIFE or HUSBAND, whichever occurs first.
>
> "Each party shall be responsible for their own taxes due to their income from the military retirement."

The district court approved the Agreement and incorporated it as part of the divorce decree. Eric never made any payments under the Agreement.

3

Almost 22 years later, in 2017, Eric moved to declare the division of his military retirement account to be void and an unenforceable judgment. He asserted the judgment was dormant because Christina failed to file a renewal affidavit within five years of the divorce and did not revive the judgment within seven years of the divorce. Eric also asserted the judgment should be barred by laches because Christina waited more than 21 years to attempt to enforce the judgment. Christina then moved to enforce the judgment and to revive the judgment.

The district court initially denied Christina's motion to enforce the judgment finding the division of retirement benefits was a dormant judgment because Christina had the ability to enforce her judgment by filing a qualified domestic relations order (QDRO). The order did not address Eric's laches argument.

Christina moved for reconsideration, pointing out she was not eligible to receive direct payment of Eric's military retirement under federal statute because they were not married for 10 years. She argued the judgment required installment payments and, as a result, each payment expired seven years after it became due instead of the entire judgment expiring in 2002. The district court agreed with Christina's argument and held all payments after September 1, 2010, were revived and enforceable. The district court did not address whether laches applied.

*The judgment is subject to reviver.*

Eric argues the district court erred when it granted Christina's motion to enforce the judgment because the judgment was dormant. Since K.S.A. 2017 Supp. 60-2403 governs dormancy of judgments, this court has unlimited review. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015) (holding interpretation of a statute is a question of law over which appellate courts have unlimited review).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

K.S.A. 2017 Supp. 60-2403 states:

"(a)(1) Except as provided in subsection (b), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so.

(2) A 'renewal affidavit' is a statement under oath, signed by the judgment creditor or the judgment creditor's attorney, filed in the proceedings in which the judgment was entered and stating the remaining balance due and unpaid on the judgment.
. . . .

"(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited."

K.S.A. 2017 Supp. 60-2403(a) applies to judgments in divorce actions. See *Bank IV Wichita v. Plein*, 250 Kan. 701, Syl. ¶ 3, 830 P.2d 29 (1992); see also *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 42, 362 P.3d 843 (2015) (holding division of a party's retirement account in a divorce decree is a judgment subject to K.S.A. 2014 Supp. 60-2403 when the division is a final determination of the parties' interests in the marital estate).

In *Larimore*, the panel held K.S.A. 2014 Supp. 60-2403(c) does not toll the running of the dormancy period for a divorce decree judgment dividing retirement plans governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 (2012) et seq. The panel concluded the judgment was not stayed because the legal process for enforcing the judgment—filing a QDRO—was not stayed or prohibited before the benefits become payable. Since the legal process for enforcing the judgment was available to the wife, and she failed to file a QDRO or renewal affidavit within seven years of the divorce decree, the panel held the judgment was "absolutely extinguished and unenforceable." 52 Kan. App. 2d at 44.

Eric argues *Larimore* should control. He contends Christina cannot rely on K.S.A. 2017 Supp. 60-2403(c) because "no court order, statutory tolling period or other legal impairment" prevented her from collecting her share of his retirement account starting in 1995. He asserts the fact that some payments were not yet due did not prevent her from executing in other ways or filing a renewal affidavit.

Christina contends receiving direct payment from the military finance center was impossible because the parties had not been married for at least 10 years. She contends

*Larimore* and its line of cases are distinguishable because the Department of Defense will not pay her directly and the only way for her to receive her share of the military retirement is for Eric to pay her. Thus, she asserts, the divorce decree set out monthly installment payments payable over an indefinite number of months and years.

Christina argues the divorce decree did not determine the specific amount Eric was to pay her and, since the payments terminated upon the death of either party, there was no way to establish the total amount of the payments. She contends the district court "obviously retained jurisdiction to . . . enforce the parties' agreement to calculate amount paid and owed, to determine what amount constituted 20% in accordance with the Agreement, and to order termination of the payments upon death of either party." As a result, Christina asks this court to apply the holding of *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, 684, 779 P.2d 442 (1989):

> "[T]he same rules that apply to alimony or child support installments also apply to a judgment for a division of property which is payable in installments commencing in the future and payable over a term of years.
>
> . . . .
>
> ". . . As to the judgment payable in installments, the dormancy period commenced as to each installment when it became due and was collectable by execution or other legal process."

Eric argues *Wichita Federal* should not be expanded to apply to division of retirement assets.

We find Christina's argument more persuasive. This case is distinguishable from *Larimore*. In *Larimore*, had the wife filed a QDRO, she would have begun receiving under the retirement plan when it began to pay out. In contrast, even if Christina had filed a QDRO, it would have been futile. Under 10 U.S.C. § 1408(d)(2) (2012), to receive a portion of a spouse's military retirement pay directly, the parties must have been married

7

for a period of at least 10 years during which one of the parties was in the military. Christina and Eric were only married for nine years. As a result, even if Christina had filed a QDRO, the Department of Defense would not have honored her QDRO. The only way for Christina to receive the military retirement pay awarded her in the Agreement was for Eric to pay it directly, something he failed to do.

The military retirement pay Eric agreed to pay Christina was a percentage of his monthly payment from the Department of Defense and thus a monthly installment payment Eric should pay each and every month as it becomes due. The Agreement states Christina was entitled to her portion "commencing on the first day of the month following the finalization of this divorce." The Agreement does not specify a total amount Eric must pay Christina; it does not establish a lump sum distribution at some point in the future and talks about the percentage owed on the first of each month. The Agreement acknowledges the monthly military retirement payments terminate only upon the death of either party. Because each payment was not due until the first of the month—and only if both parties were still living—Christina could not act to enforce the judgment before the first of each month as it became due. We find the monthly military retirement payments should be treated like installment payments and, under *Wichita Federal*, the dormancy period for each individual payment started when it became due and collectable on the first of each month until the death of either party. The district court did not err when it found the divorce decree "provided for monthly payments, which became monthly judgments," now subject to execution upon for the last five years and revived for years six and seven.

Affirmed.

BUSER, J., dissenting:  I dissent. I would reverse the district court's order and remand the case with directions to the district court to release the judgment of record as mandated by K.S.A. 2017 Supp. 60-2403(a)(1). In my view, this holding is statutorily required because Christina A. Strom did not enforce her judgment by execution, garnishment, proceedings in aid of execution, or filing of a renewal affidavit within the requisite time period and did not revive the dormant judgment in a timely fashion. As a consequence, the 22-year-old divorce judgment awarding Christina a percentage of Eric G. Strom's military retirement benefits became unenforceable and extinguished. See K.S.A. 2017 Supp. 60-2403; *In re Marriage of Larimore*, 52 Kan. App. 2d 31, Syl. ¶ 5, 362 P.3d 843 (2015), *rev. denied* 305 Kan. 1253 (2017); *Long v. Brooks*, 6 Kan. App. 2d 963, 966, 636 P.2d 242 (1981).

*In re Marriage of Larimore* is on point and dispositive of this issue. In *Larimore*, David and Janice divorced after 21 years of marriage. A settlement agreement which was incorporated into the divorce decree divided the couple's marital property, including the division of the parties' retirement accounts. In particular, the decree divided the parties' retirement accounts at the Boeing Company by awarding each spouse 60% of their own retirement accounts and 40% of the other spouse's retirement accounts.

It was undisputed that after the divorce was finalized, neither Janice nor David ever submitted a qualified domestic relations order (QDRO) which is the approved method for dividing retirement accounts of divorced parties governed by the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 (2012) et seq. See *In re Marriage of Behnke & Ingram*, No. 112,233, 2015 WL 1311014, at *1 (Kan. App. 2015) (unpublished opinion).

Almost 12 years later, David filed a motion in the district court seeking an order declaring the division of the parties' retirement accounts in the divorce decree to be a void and unenforceable judgment because no execution was ever made and a renewal affidavit was never filed. Of note, at the time of the litigation, David had not yet begun to receive any retirement benefits. In response, Janice opposed the motion and asked the district court to facilitate the filing of a QDRO to protect her interest in David's retirement account.

After an evidentiary hearing, the district court granted David's motion to declare the division of the couple's retirement accounts extinguished and denied Janice's motion to compel the execution of a QDRO.

In its decision, the district court explained that a settlement agreement incorporated into a divorce decree is a judgment which is susceptible to dormancy and extinguishment if the party who obtained the judgment does not seek to enforce it in a timely fashion. See K.S.A. 2017 Supp. 60-2403. The district court cited *In re Marriage of Smith*, No. 105,365, 2012 WL 1649835 (Kan. App. 2012) (unpublished opinion), as persuasive authority for the conclusion that no "'exception for QDROs exists to the application of either dormancy or extinguishment.'" *In re Marriage of Larimore*, 52 Kan. App. 2d at 35. Because Janice and David failed to execute upon the judgment by filing a QDRO or obtaining a renewal affidavit in a timely fashion, the district court found the judgment had been extinguished and ceased to exist. Janice appealed to our court.

In a published opinion, our court in *In re Marriage of Larimore* established important precedent directly applicable to the division of retirement benefits in divorce decrees. First, *In re Marriage of Larimore* established that "[a] district court's division of a party's retirement accounts in a divorce decree constitutes a judgment subject to dormancy under K.S.A. 2014 Supp. 60-2403 when the division qualifies as a final determination of the parties' interests in the marital estate." 52 Kan. App. 2d 31, Syl. ¶ 2.

10

In *In re Marriage of Larimore*, the division of retirement accounts was 60% and 40%. In the present case, the division of retirement funds was 50% of Eric's military retirement pay for 10 years and 20% thereafter. Similar to *In re Marriage of Larimore*, in this case, the divorce decree granted a final judgment based on the division of retirement income. At the evidentiary hearing, Christina's attorney acknowledged this important fact: "And I'm not disputing that it was a judgment, at the time the divorce decree was entered there was a judgment." Similarly, on appeal, Christina candidly concedes that "the 'Decree of Divorce' . . . that adopted the Agreement in this case constituted a judgment as contemplated by K.S.A. 60-2403 language of 'any judgment.'"

As of the filing of the divorce decree in 1995, both Eric and Christina understood there was a judgment awarding a specific percentage of Eric's military retirement pay to Christina for a definite period of time. There was no ambiguity and no loose ends. The property division of the marital estate as it related to Christina's share of Eric's military retirement pay was final.

*In re Marriage of Larimore*'s precedent is directly applicable to this case. This property division of retirement benefits qualified as a final determination of the parties' interests in the marital estate, which means the judgment was subject to dormancy under K.S.A. 2017 Supp. 60-2403(a)(1). 52 Kan. App. 2d 31, Syl. ¶ 2; see also *In re Marriage of Moore*, No. 112,047, 2015 WL 5312023, at *3-5 (Kan. App. 2015) (unpublished opinion) (district court erred in its legal conclusion that the division of property relating to the parties' retirement benefits was not a judgment subject to dormancy because the division of marital property is a final determination of the parties' interests in the marital estate).

Given that Christina's judgment was subject to dormancy, a second important precedent from *In re Marriage of Larimore* provides important guidance to the resolution

11

of the issue on appeal: "Under the tolling provision of K.S.A. 2014 Supp. 60-2403(c), the dormancy period does not run 'during any period in which the enforcement of the judgment by legal process is stayed or prohibited.'" 52 Kan. App. 2d 31, Syl. ¶ 4.

In *In re Marriage of Larimore*, for 12 years, Janice never sought to enforce the judgment awarding her a percentage of David's retirement accounts. As justification for her inaction, Janice argued that it was impossible for her to collect on David's retirement benefits until he began receiving them—which had not yet happened. Our court described Janice's argument in this way: "Janice predicates her tolling argument on her inability to *receive money* from David's plans rather than her inability to enforce her interest by *legal process*." 52 Kan. App. 2d at 43. In *In re Marriage of Larimore*, our court found that no legal process prevented Janice from executing on her judgment. 52 Kan. App. 2d at 44.

In the present case, unlike *In re Marriage of Larimore*, Christina has never invoked K.S.A. 2017 Supp. 60-2403(c) and claimed that the dormancy period was tolled because enforcement of the judgment was stayed or prohibited by legal process. Moreover, the district court did not predicate its ruling on the basis that the judgment was tolled. As a result, given that Christina was awarded a final judgment in 1995, and she did not enforce it, renew it, or claim tolling of the dormancy period, *Larimore* teaches that in accordance with K.S.A. 2017 Supp. 60-2403(a)(1) the judgment was extinguished.

Although Christina does not claim a tolling period under K.S.A. 2017 Supp. 60-2403(c), for 22 years she took no action to enforce her judgment awarding her a percentage of Eric's military retirement pay which—unlike *In re Marriage of Larimore*—was being continuously provided to Eric from 1995 until this litigation began in 2017. On appeal, Christina justifies her inaction by arguing that "because the parties were not married for 10 years, [Christina] is *disqualified* from receiving her share of [Eric's] military retirement—in direct conflict with the Agreement that [Eric's] attorney drafted and the parties signed." (Emphasis added.) I question the merit of this argument.

12

First, as we stated in *In re Marriage of Larimore*:

> "In particular, our court in *In re Marriage of Smith*[, No. 105,365, 2012 WL 1649865, at *4-5 (Kan. App. 2012) (unpublished opinion),] found the wife's delay in seeking to enforce the division had caused her rights to her ex-husband's retirement benefits to become extinguished:
>
> > "'To begin with, [wife] has cited no direct valid authority for the proposition that a QDRO is required before a judgment which divides a retirement account becomes final or enforceable. Nor are we aware of such. Under K.S.A. 60-254(a), a judgment is defined as the "final determination of the rights of the parties in an action." The decree here awarded to [wife] one-half of [husband]'s 401(k) account. That amounted to a final determination of her rights in that account. A QDRO is merely the ministerial avenue through which she must travel in order to obtain what she was awarded. It would not provide her any more than what the decree awarded her. While a QDRO may have been required for [wife] to actually access the portion of [husband]'s account that she was awarded, that has nothing to do with whether the judgment that awarded her a portion of the account was final and enforceable.'" 52 Kan. App. 2d at 41-42.

In other words, Christina's success or failure in obtaining a QDRO from the military finance center had no effect on the finality of the judgment or the application of K.S.A. 2017 Supp. 60-2403.

Second, there is no evidence that Christina ever presented a QDRO to the military finance center, made an inquiry to Department of Defense officials in an effort to obtain payment, or availed herself of the numerous procedures Kansas law provides to execute on her judgment. This point was made by Eric's counsel who stated at the hearing, "Again, Your Honor, even if she could not submit the form to DFAS, there was no evidence to even show that that had been attempted. But even if she had, there [are] still mechanisms in place to enforce the judgment." The district judge acknowledged the truth of counsel's assertion stating, "I understand that."

13

Ironically, by Christina filing a "Motion to Enforce Judgment" in 2017 wherein she asked "the Court [to] enter an Order enforcing the judgment regarding the payment of [Eric's] military retirement to [Christina]," she wholly undermines her argument that for 22 years she was *disqualified* from receiving her share of Eric's military retirement pay. As in this case, wherein the district court ordered partial enforcement of the judgment regarding retirement benefits upon her motion, Christina could have filed the same motion prior to the time her judgment became extinguished and she would have been able to obtain the full measure of retirement benefits provided by the judgment.

*In re Marriage of Larimore*, 52 Kan. App. 2d at 41-42, and *In re Marriage of Smith*, 2012 WL 1649865, at *4-5, teach that the finality and enforceability of Christina's judgment did not depend on the ministerial means by which Christina sought to obtain the benefits of that judgment. Christina was awarded a judgment in 1995 and under K.S.A. 60-2403(a)(1), unless a renewal affidavit or execution on the judgment was issued in a timely fashion, the judgment became dormant. If a judgment remains dormant for two years—as it did in this case—it is the statutory duty of the district court to release it of record upon request. K.S.A. 2017 Supp. 60-2403(a)(1).

Finally, the majority's reliance on *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, 779 P.2d 442 (1989), is misplaced. First, unlike *In re Marriage of Larimore* which is analogous to the facts of the case on appeal, *Wichita Federal* did not address a property division of retirement benefits but an appeal by a title company of the district court's ruling that a judgment lien had attached to the judgment debtor's (ex-husband's) after-acquired real property and had not become dormant. See 13 Kan. App. 2d at 679.

Second, that aspect of *Wichita Federal* which my colleagues cite for support specifically dealt with the property division judgment against the ex-husband for

14

$31,600, payable in 15 semi-annual installments of $2,250, beginning on May 1, 1981 (four years after the divorce was final), and payable on October 31 and May 1 of successive years until paid in full. In short, it was a judgment payable by the ex-husband according to a monthly installment payment plan beginning four years after the judgment was entered.

In our case, the majority asserts: "The military retirement pay Eric agreed to pay Christina was a percentage of his monthly payment from the Department of Defense and thus created a monthly installment payment Eric should pay each and every month as it becomes due." Slip op. at 8. I disagree. The divorce decree did not provide that Eric was to pay Christina. The divorce decree specifically provided that "'[t]he WIFE shall receive by direct payment from the military finance center the amount as set forth above . . . .'" Slip op. at 3. Additionally, the divorce decree never mentioned monthly installment payments. In relevant part the agreement simply stated that "'[a]fter July 1, 2005, the WIFE shall be entitled to receive twenty (20%) of HUSBAND's military retirement pay.'" Slip op. at 3. The plain language of the divorce decree shows that at the time of the couple's divorce there was no provision that Eric was responsible for providing Christina his military retirement pay according to a monthly installment payment plan.

Third, in *Wichita Federal*, our court noted that the judgment creditor (ex-wife) executed on her judgment within five years of the first installment payment due date, May 31, 1981. As a result, our court stated: "In the present case, under the strictest interpretation, there would have been no right for an execution to levy until May 31, 1981, and timely permissible action took place within five years of that date, *which prevented dormancy*." (Emphasis added.) 13 Kan. App. 2d at 684. Unlike the case on appeal where Christina took no action to enforce her judgment for 22 years after Eric's first retirement payment was due, in *Wichita Federal* our court highlighted that the ex-wife executed on her judgment *within the dormancy period*—within five years of the date the *first* installment payment was due. This clearly suggests that the *Wichita Federal*

15

court would have held that since Christina did not enforce her judgment or renew it during the five years after Eric's first retirement payment was due, the entire judgment (including future payments not yet due) would have become dormant. In sum, *Wichita Federal* does not support the majority's decision in this case.

In conclusion, for all of the reasons discussed, I would follow our court's precedent in *In re Marriage of Larimore*, reverse the district court's order, and remand the case with directions to the district court to comply with the duty mandated by K.S.A. 2017 Supp. 60-2403(a)(1) and release the judgment of record.