Buser, J., dissenting:
I dissent. I would reverse the district court's order and remand the case with directions *588 to the district court to release the judgment of record as mandated by K.S.A. 2017 Supp. 60-2403(a)(1). In my view, this holding is statutorily required because Christina A. Strom did not enforce her judgment by execution, garnishment, proceedings in aid of execution, or filing of a renewal affidavit within the requisite time period and did not revive the dormant judgment in a timely fashion. As a consequence, the 22-year-old divorce judgment awarding Christina a percentage of Eric G. Strom's military retirement benefits became unenforceable and extinguished. See K.S.A. 2017 Supp. 60-2403 ; In re Marriage of Larimore , 52 Kan. App. 2d 31, Syl. ¶ 5, 362 P.3d 843 (2015), rev. denied 305 Kan. 1253, --- P.3d ---- (2017); Long v. Brooks , 6 Kan. App. 2d 963, 966, 636 P.2d 242 (1981).
In re Marriage of Larimore is on point and dispositive of this issue. In Larimore , David and Janice divorced after 21 years of marriage. A settlement agreement which was incorporated into the divorce decree divided the couple's marital property, including the division of the parties' retirement accounts. In particular, the decree divided the parties' retirement accounts at the Boeing Company by awarding each spouse 60% of their own retirement accounts and 40% of the other spouse's retirement accounts.
It was undisputed that after the divorce was finalized, neither Janice nor David ever submitted a qualified domestic relations order (QDRO) which is the approved method for dividing retirement accounts of divorced parties governed by the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 (2012) et seq. See In re Marriage of Behnke & Ingram , No. 112,233, 2015 WL 1311014, at *1 (Kan. App. 2015) (unpublished opinion).
Almost 12 years later, David filed a motion in the district court seeking an order declaring the division of the parties' retirement accounts in the divorce decree to be a void and unenforceable judgment because no execution was ever made and a renewal affidavit was never filed. Of note, at the time of the litigation, David *662 had not yet begun to receive any retirement benefits. In response, Janice opposed the motion and asked the district court to facilitate the filing of a QDRO to protect her interest in David's retirement account.
After an evidentiary hearing, the district court granted David's motion to declare the division of the couple's retirement accounts extinguished and denied Janice's motion to compel the execution of a QDRO.
In its decision, the district court explained that a settlement agreement incorporated into a divorce decree is a judgment which is susceptible to dormancy and extinguishment if the party who obtained the judgment does not seek to enforce it in a timely fashion. See K.S.A. 2017 Supp. 60-2403. The district court cited In re Marriage of Smith , No. 105,365, 2012 WL 1649835 (Kan. App. 2012) (unpublished opinion), as persuasive authority for the conclusion that no " 'exception for QDROs exists to the application of either dormancy or extinguishment.' " In re Marriage of Larimore , 52 Kan. App. 2d at 35, 362 P.3d 843. Because Janice and David failed to execute upon the judgment by filing a QDRO or obtaining a renewal affidavit in a timely fashion, the district court found the judgment had been extinguished and ceased to exist. Janice appealed to our court.
In a published opinion, our court in In re Marriage of Larimore established important precedent directly applicable to the division of retirement benefits in divorce decrees. First, In re Marriage of Larimore established that "[a] district court's division of a party's retirement accounts in a divorce decree constitutes a judgment subject to dormancy under K.S.A. 2014 Supp. 60-2403 when the division qualifies as a final determination of the parties' interests in the marital estate." 52 Kan. App. 2d 31, Syl. ¶ 2, 362 P.3d 843.
In In re Marriage of Larimore , the division of retirement accounts was 60% and 40%. In the present case, the division of retirement funds was 50% of Eric's military retirement pay for 10 years and 20% thereafter. Similar to In re Marriage of Larimore , in this case, the divorce decree granted a final judgment based on the division of retirement income. At the evidentiary hearing, Christina's attorney acknowledged this important *589 fact: "And I'm *663 not disputing that it was a judgment, at the time the divorce decree was entered there was a judgment." Similarly, on appeal, Christina candidly concedes that "the 'Decree of Divorce' ... that adopted the Agreement in this case constituted a judgment as contemplated by K.S.A. 60-2403 language of 'any judgment.' "
As of the filing of the divorce decree in 1995, both Eric and Christina understood there was a judgment awarding a specific percentage of Eric's military retirement pay to Christina for a definite period of time. There was no ambiguity and no loose ends. The property division of the marital estate as it related to Christina's share of Eric's military retirement pay was final.
In re Marriage of Larimore 's precedent is directly applicable to this case. This property division of retirement benefits qualified as a final determination of the parties' interests in the marital estate, which means the judgment was subject to dormancy under K.S.A. 2017 Supp. 60-2403(a)(1). 52 Kan. App. 2d 31, Syl. ¶ 2, 362 P.3d 843 ; see also In re Marriage of Moore , No. 112,047, 2015 WL 5312023, at *3-5 (Kan. App. 2015) (unpublished opinion) (district court erred in its legal conclusion that the division of property relating to the parties' retirement benefits was not a judgment subject to dormancy because the division of marital property is a final determination of the parties' interests in the marital estate).
Given that Christina's judgment was subject to dormancy, a second important precedent from In re Marriage of Larimore provides important guidance to the resolution of the issue on appeal: "Under the tolling provision of K.S.A. 2014 Supp. 60-2403(c), the dormancy period does not run 'during any period in which the enforcement of the judgment by legal process is stayed or prohibited.' " 52 Kan. App. 2d 31, Syl. ¶ 4, 362 P.3d 843.
In In re Marriage of Larimore , for 12 years, Janice never sought to enforce the judgment awarding her a percentage of David's retirement accounts. As justification for her inaction, Janice argued that it was impossible for her to collect on David's retirement benefits until he began receiving them-which had not yet happened. Our court described Janice's argument in this way: "Janice predicates her tolling argument on her inability to receive money from David's plans rather than her inability to enforce her interest by *664 legal process ." 52 Kan. App. 2d at 43, 362 P.3d 843. In In re Marriage of Larimore , our court found that no legal process prevented Janice from executing on her judgment. 52 Kan. App. 2d at 44, 362 P.3d 843.
In the present case, unlike In re Marriage of Larimore , Christina has never invoked K.S.A. 2017 Supp. 60-2403(c) and claimed that the dormancy period was tolled because enforcement of the judgment was stayed or prohibited by legal process. Moreover, the district court did not predicate its ruling on the basis that the judgment was tolled. As a result, given that Christina was awarded a final judgment in 1995, and she did not enforce it, renew it, or claim tolling of the dormancy period, Larimore teaches that in accordance with K.S.A. 2017 Supp. 60-2403(a)(1) the judgment was extinguished.
Although Christina does not claim a tolling period under K.S.A. 2017 Supp. 60-2403(c), for 22 years she took no action to enforce her judgment awarding her a percentage of Eric's military retirement pay which-unlike In re Marriage of Larimore -was being continuously provided to Eric from 1995 until this litigation began in 2017. On appeal, Christina justifies her inaction by arguing that "because the parties were not married for 10 years, [Christina] is disqualified from receiving her share of [Eric's] military retirement-in direct conflict with the Agreement that [Eric's] attorney drafted and the parties signed." (Emphasis added.) I question the merit of this argument.
First, as we stated in In re Marriage of Larimore :
"In particular, our court in In re Marriage of Smith [, No. 105,365, 2012 WL 1649835, at *4-5 (Kan. App. 2012) (unpublished opinion),] found the wife's delay in seeking to enforce the division had caused her rights to her ex-husband's retirement benefits to become extinguished:
*590 " 'To begin with, [wife] has cited no direct valid authority for the proposition that a QDRO is required before a judgment which divides a retirement account becomes final or enforceable. Nor are we aware of such. Under K.S.A. 60-254(a), a judgment is defined as the "final determination of the rights of the parties in an action." The decree here awarded to [wife] one-half of [husband]'s 401(k) account. That amounted to a final determination of her rights in that account. A QDRO is merely the ministerial avenue through which she must travel in order to obtain what she was awarded. It would not provide her any more than what the decree awarded her. While a QDRO may have been required for [wife] to actually access the portion of [husband]'s account that she was awarded, that has nothing *665 to do with whether the judgment that awarded her a portion of the account was final and enforceable.' " 52 Kan. App. 2d at 41-42, 362 P.3d 843.
In other words, Christina's success or failure in obtaining a QDRO from the military finance center had no effect on the finality of the judgment or the application of K.S.A. 2017 Supp. 60-2403.
Second, there is no evidence that Christina ever presented a QDRO to the military finance center, made an inquiry to Department of Defense officials in an effort to obtain payment, or availed herself of the numerous procedures Kansas law provides to execute on her judgment. This point was made by Eric's counsel who stated at the hearing, "Again, Your Honor, even if she could not submit the form to DFAS, there was no evidence to even show that that had been attempted. But even if she had, there [are] still mechanisms in place to enforce the judgment." The district judge acknowledged the truth of counsel's assertion stating, "I understand that."
Ironically, by Christina filing a "Motion to Enforce Judgment" in 2017 wherein she asked "the Court [to] enter an Order enforcing the judgment regarding the payment of [Eric's] military retirement to [Christina]," she wholly undermines her argument that for 22 years she was disqualified from receiving her share of Eric's military retirement pay. As in this case, wherein the district court ordered partial enforcement of the judgment regarding retirement benefits upon her motion, Christina could have filed the same motion prior to the time her judgment became extinguished and she would have been able to obtain the full measure of retirement benefits provided by the judgment.
In re Marriage of Larimore , 52 Kan. App. 2d at 41-42, 362 P.3d 843, and In re Marriage of Smith , 2012 WL 1649835, at *4-5, teach that the finality and enforceability of Christina's judgment did not depend on the ministerial means by which Christina sought to obtain the benefits of that judgment. Christina was awarded a judgment in 1995 and under K.S.A. 60-2403(a)(1), unless a renewal affidavit or execution on the judgment was issued in a timely fashion, the judgment became dormant. If a judgment remains dormant for two years-as it did in this case-it is the statutory duty of the district court to release it of record upon request. K.S.A. 2017 Supp. 60-2403(a)(1).
*666 Finally, the majority's reliance on Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership , 13 Kan. App. 2d 678, 779 P.2d 442 (1989), is misplaced. First, unlike In re Marriage of Larimore which is analogous to the facts of the case on appeal, Wichita Federal did not address a property division of retirement benefits but an appeal by a title company of the district court's ruling that a judgment lien had attached to the judgment debtor's (ex-husband's) after-acquired real property and had not become dormant. See 13 Kan. App. 2d at 679, 779 P.2d 442.
Second, that aspect of Wichita Federal which my colleagues cite for support specifically dealt with the property division judgment against the ex-husband for $31,600, payable in 15 semi-annual installments of $2,250, beginning on May 1, 1981 (four years after the divorce was final), and payable on October 31 and May 1 of successive years until paid in full. In short, it was a judgment payable by the ex-husband according to a monthly installment payment plan beginning four years after the judgment was entered.
*591 In our case, the majority asserts: "The military retirement pay Eric agreed to pay Christina was a percentage of his monthly payment from the Department of Defense and thus a monthly installment payment Eric should pay each and every month as it becomes due." 56 Kan. App. 2d at 661. I disagree. The divorce decree did not provide that Eric was to pay Christina. The divorce decree specifically provided that " '[t]he WIFE shall receive by direct payment from the military finance center the amount as set forth above ....' " 56 Kan. App. 2d at 657. Additionally, the divorce decree never mentioned monthly installment payments. In relevant part the agreement simply stated that " '[a]fter July 1, 2005, the WIFE shall be entitled to receive twenty (20%) of HUSBAND's military retirement pay.' " 56 Kan. App. 2d at 657. The plain language of the divorce decree shows that at the time of the couple's divorce there was no provision that Eric was responsible for providing Christina his military retirement pay according to a monthly installment payment plan.
Third, in Wichita Federal , our court noted that the judgment creditor (ex-wife) executed on her judgment within five years of the first installment payment due date, May 31, 1981. As a result, *667 our court stated: "In the present case, under the strictest interpretation, there would have been no right for an execution to levy until May 31, 1981, and timely permissible action took place within five years of that date, which prevented dormancy ." ( Emphasis added.) 13 Kan. App. 2d at 684, 779 P.2d 442. Unlike the case on appeal where Christina took no action to enforce her judgment for 22 years after Eric's first retirement payment was due, in Wichita Federal our court highlighted that the ex-wife executed on her judgment within the dormancy period -within five years of the date the first installment payment was due. This clearly suggests that the Wichita Federal court would have held that since Christina did not enforce her judgment or renew it during the five years after Eric's first retirement payment was due, the entire judgment (including future payments not yet due) would have become dormant. In sum, Wichita Federal does not support the majority's decision in this case.
In conclusion, for all of the reasons discussed, I would follow our court's precedent in In re Marriage of Larimore , reverse the district court's order, and remand the case with directions to the district court to comply with the duty mandated by K.S.A. 2017 Supp. 60-2403(a)(1) and release the judgment of record.