No. 112,422

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DAVID E. LARIMORE,
*Appellee*,

and

JANICE M. LARIMORE,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Kansas dormancy statute, K.S.A. 2014 Supp. 60-2403, governs when a judgment becomes dormant and establishes the circumstances under which a district judge must release the judgment of record. Because any judgment of any court of record in this state is subject to dormancy, K.S.A. 2014 Supp. 60-2403(a)(1) is not limited to monetary judgments.

2.

A district court's division of a party's retirement accounts in a divorce decree constitutes a judgment subject to dormancy under K.S.A. 2014 Supp. 60-2403 when the division qualifies as a final determination of the parties' interests in the marital estate.

3.

A party may execute on a judgment in a divorce decree that divides a party's retirement accounts governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 (2012) *et seq.*, by filing a qualified domestic relations order with the retirement plan administrator for each retirement account.

1

4.

Under the tolling provision of K.S.A. 2014 Supp. 60-2403(c), the dormancy period does not run "during any period in which the enforcement of the judgment by legal process is stayed or prohibited."

5.

Under the facts of this case, although retirement benefits were not yet payable, K.S.A. 2014 Supp. 2403(c) did not toll the running of the dormancy period for a judgment in a divorce decree that divided a party's retirement accounts governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 (2012) *et seq.*, because the legal process for enforcing the judgment, the filing of a qualified domestic relations order, was not stayed or prohibited.

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed November 6, 2015. Affirmed.

*Jeff Dewey*, of Dewey & Lund, LLP, of Wichita, for appellant.

*Stephen M. Turley*, of Cleary, Wagle & West, of Wichita, for appellee.

Before PIERRON, P.J., BUSER and POWELL, JJ.

BUSER, J.:  Janice M. Larimore (Janice) challenges the district court's refusal in 2014 to compel her former husband, David E. Larimore (David), to cooperate in the preparation and execution of a qualified domestic relations order (QDRO). The QDRO was necessary to execute on the division of David's retirement accounts provided in the parties' divorce decree filed almost 12 years earlier in 2002. Janice contends the district court erred when it found the judgment had become absolutely extinguished and unenforceable because she failed to execute on the judgment within 7 years of the entry of the divorce decree. Finding no error, we affirm the district court's order.

2

David and Janice divorced after 21 years of marriage. According to the Journal Entry of Judgment and Decree of Divorce filed on October 8, 2002, the parties, with the assistance of counsel, executed a settlement agreement which defined their respective marital rights and obligations and provided for the care, custody, and support of their minor child. After the district court found the parties' agreement was fair, just, and equitable, it incorporated the property settlement agreement into the final divorce decree. See *In re Estate of McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013), *rev. denied* 299 Kan. 1269 (2014).

In keeping with the settlement agreement, the divorce decree ordered the division of the parties' retirement accounts. In particular, David received the entirety of his "Cessna retirement account." But the parties opted to divide their respective retirement accounts at the Boeing Company (retirement accounts)—where both spouses were employed at the time of the divorce—by awarding each spouse 60% of their own retirement accounts and 40% of the other spouse's retirement accounts. It is undisputed, however, that neither Janice nor David submitted a QDRO, the approved method for dividing retirement accounts governed by the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 (2012) *et seq.*, between the parties involved in a divorce proceeding. See *In re Marriage of Behnke & Ingram*, No. 112,233, 2015 WL 1311014, at *1 (Kan. App. 2015) (unpublished opinion).

Almost 12 years later, on March 26, 2014, David filed a motion in the Sedgwick County District Court seeking "an order declaring the division of the parties' retirement accounts set forth in the [divorce] [d]ecree to be a void and unenforceable judgment." Based on K.S.A. 2014 Supp. 60-2403 and *Bank IV Wichita v. Plein*, 250 Kan. 701, 830 P.2d 29 (1992), David contended the division of the parties' retirement accounts had been extinguished because no execution was made and a renewal affidavit was never filed.

Additionally, David asserted the equitable doctrines of laches and estoppel prohibited Janice from executing on this judgment because not only had she delayed execution for an unreasonable amount of time, she had "[taken] action and made statements wherein she indicated that she no longer wished to receive [his] retirement benefits" and he had relied upon her inaction to his detriment.

In response, Janice filed a "Motion to Compel the Preparation and Execution of Qualified Domestic Relations Orders" and a "Motion to Stay Payments from Retirement Plans" on April 8, 2014. According to Janice, the divorce decree transferred ownership of a portion of David's retirement accounts to her and "[o]nce property[, other than cash judgments] is divided in a [d]ecree, it stands forever divided, and that division does not erode by virtue of dormancy." Janice further asserted that David had breached the parties' settlement agreement by seeking to void the division of their retirement accounts.

Alternatively, Janice contended that while K.S.A. 2014 Supp. 60-2403 renders judgments dormant if a collection, garnishment, or renewal affidavit is not sought within a prescribed time, "[i]n the case of divided retirement plans, no such collection efforts may be had until the terms of the plan are met." As a result, because David was not yet receiving retirement benefits, Janice claimed the dormancy period had not started running because "[g]arnishment and/or execution [were] not available." Janice also argued that dormancy periods on the division of retirement accounts do not commence until the plan has entered pay status because federal law "puts no time limits on the filing of QDROs." She acknowledged, however, that in order to effectuate the division of David's retirement accounts, a QDRO was required to be filed; thus, she requested an order compelling David "to provide information, documentation and to otherwise cooperate in the preparation and execution of [a QDRO]."

On July 16, 2014, the district court held an evidentiary hearing to consider the parties' motions. Both Janice and David testified. David testified that within 1 month after

4

the finalization of the divorce, Janice told him she did not desire to pursue a division of the retirement accounts. David testified that Janice told him, "[S]he [wasn't] going to go after my [retirement accounts], if I [didn't] go after hers." David testified that he "took [Janice] at her word," and based his financial decisions upon the belief that he would be entitled to collect all of his retirement accounts. With this understanding, he did not file a QDRO to collect his share of Janice's retirement accounts.

Janice, on the other hand, denied making any statements to David about waiving her right to enforce the division of the retirement accounts. On the contrary, Janice claimed she had planned her financial affairs expecting that she would receive 40% of David's retirement accounts. Janice testified that although she was aware that David could have made an early withdrawal from his 401k plan, she never took any actions to protect her portion of his retirement accounts because she assumed further action was unnecessary to give effect to the divorce decree. According to Janice, while nothing prevented her from filing a QDRO, she never did because she "thought everything was in place," and she was unaware a QDRO needed to be filed until she started "looking into [her] retirement."

The district court took the matter under advisement and issued a detailed memorandum decision on July 28, 2014. David's motion to declare the division of the retirement accounts void was granted, and Janice's motion to compel the execution of a QDRO was denied.

In the decision, the district court explained that a settlement agreement incorporated into a divorce decree has the characteristics of a judgment, and under K.S.A. 2014 Supp. 60-2403, a judgment becomes dormant 5 years after its entry if the benefiting party fails to execute upon it within this timeframe. Once a judgment is dormant, a party may seek to revive it by filing a renewal affidavit within 2 years, but if no such affidavit is filed, "'it shall be the duty of the judge to release the judgment of record when

5

requested to do so.'" The district judge found that David had not deceived Janice into failing to file a timely QDRO or "otherwise timely seek to enforce the judgment."

According to the district court, neither party nor the court had been able to locate any published Kansas caselaw which established that a division of retirement accounts in a divorce case should be treated differently from any other judgment subject to dormancy and extinguishment. The district court cited, however, *In re Marriage of Smith*, No. 105,365, 2012 WL 1649835 (Kan. App. 2012) (unpublished opinion), as persuasive authority for the conclusion that no "exception for QDROs exists to the application of either dormancy or extinguishment." Consequently, because Janice and David failed to execute upon the judgment by filing a QDRO or obtaining a renewal affidavit before October 8, 2009 (7 years after the entry of the divorce decree), the district judge found the judgment had been extinguished and effectively ceased to exist.

Janice timely appeals.

INTRODUCTION

On appeal, Janice contends the district court erred on three grounds when it found her failure to file a QDRO or a renewal affidavit within 7 years of the filing of the divorce decree caused the judgment dividing the parties' retirement accounts to become absolutely extinguished and unenforceable. First, Janice contends ERISA preempts state dormancy statutes. Second, Janice asserts that judgments dividing retirement accounts in divorce proceedings are not subject to dormancy because unlike a monetary judgment, court-ordered transfers of property, *i.e.*, real estate, personal property, or retirement accounts, merely involve a transfer of ownership which are not amenable to execution or garnishment. Finally, Janice argues that if the division of retirement accounts in a divorce decree qualifies as a judgment subject to dormancy, the dormancy period has not commenced in this case because the judgment has not yet become collectible.

6

In essence, Janice's appeal presents two questions:  Is a district court's division of retirement accounts in a divorce decree subject to dormancy and extinguishment, and, if so, does the tolling provision of the dormancy statute, K.S.A. 2014 Supp. 2403(c), delay the running of the dormancy period until the retirement accounts become payable? Resolution of these questions involves the interpretation of both Kansas statutes and federal law. See K.S.A. 2014 Supp. 60-2403 and ERISA. Our court exercises unlimited review over statutory interpretation. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014).

We begin with a brief discussion of ERISA which, for the purpose of protecting interstate commerce and the interests of employee-benefit plan participants and beneficiaries, "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. See 29 U.S.C. § 1001 (2012); 29 U.S.C. § 1144(a) (2012). ERISA defines the term "'employee pension benefit plan'" as any plan, fund, or program established or maintained by an employer and/or an employee organization to provide retirement income to employees or allow for a deferral of income for periods extending to the termination of employment or beyond regardless of the method of calculating contributions, determining benefits, or distributing benefits. 29 U.S.C. § 1002(2)(A) (2012).

Pension plans typically include defined-benefit plans—a plan that entitles an employee to a fixed periodic payment from an asset pool funded by the employer, employee contributions, or a combination of the two—and defined-contribution plans—a plan that provides an individual account for each employee with benefits calculated solely upon the amount contributed to the account. 60A Am. Jur. 2d, Pensions §§ 15-16, pp. 62-65. Although there are retirement plans that do not fall within the ambit of ERISA, the parties present their arguments with the understanding that Janice's and David's retirement accounts are ERISA pension plans. See 60A Am. Jur. 2d, Pensions §§ 46-52, pp. 87-94.

ERISA prohibits the assignment or alienation of pension benefits, and this prohibition includes domestic relations orders (DROs) which attempt to create, assign, or recognize spousal property rights in an employee spouse's pension. 29 U.S.C. § 1056(d) (2012). For ERISA purposes, a DRO includes any judgment, decree, or order which was entered pursuant to state domestic relations law and "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(B)(ii) (2012).

QDROs, however, are "an exception not only to ERISA's rule against assignment of plan benefits but also to ERISA's broad preemption of state law." *Trustees of Directors Guild of America v. Tise*, 234 F.3d 415, 420 (9th Cir. 2000) (citing 29 U.S.C. § 1144[b][7]). A QDRO is a DRO which "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i) (2012). "A valid QDRO must meet the comprehensive requirements of at least three federal acts, as amended: the Internal Revenue Code, [ERISA], and the Retirement Equity Act of 1984." *In re Marriage of Cray*, 254 Kan. 376, 390, 867 P.2d 291 (1994).

In essence, to be considered a QDRO, a DRO must clearly specify:

"(i) the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

"(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

"(iii) the number of payments or period to which such order applies, and

"(iv) each plan to which such order applies." 29 U.S.C. § 1056(d)(3)(C) (2012).

ERISA circumscribes the scope of QDROs. In particular, a DRO is not a QDRO if it requires the plan to (1) provide any type or form of benefit or any option not otherwise provided; (2) provide increased benefits; or (3) pay benefits to an alternate payee that are required to be paid to an alternate payee under another QDRO. 29 U.S.C. § 1056(d)(3)(D) (2012).

Federal law also specifies the process whereby a plan administrator determines whether a DRO qualifies as a QDRO. When a plan administrator receives a DRO, the administrator shall promptly notify the participant and any alternate payees of the receipt of such order and the procedures for determining whether the order is a QDRO. 29 U.S.C. § 1056(d)(3)(G)(i)(I) (2012). Then, within a reasonable period following receipt of the DRO, the administrator shall determine whether the order is qualified and notify the participant and each alternate payee of that determination. 29 U.S.C. § 1056(d)(3)(G)(i)(II) (2012).

If benefits may already be payable to the plan participant while such a determination is being made, the administrator "shall separately account for the amounts . . . which would have been payable to the alternate payee during such period if the order had been determined to be a [QDRO]." 29 U.S.C. § 1056(d)(3)(H)(i) (2012). If within 18 months of the date on which the first payment would be required to be made under the DRO, the administrator determines that the DRO is qualified, the administrator must pay the segregated amounts, plus interest, to the person designated as an alternate payee under the QDRO, as this individual shall be considered a beneficiary under the plan. 29 U.S.C. § 1056(d)(3)(H)(ii),(v), (J) (2012). But if the DRO is not deemed qualified or the issue remains unresolved for more than 18 months, the administrator must pay the segregated amounts, plus interest, to the plan participant as if there had been no order. 29 U.S.C. § 1056(d)(3)(H)(iii) (2012). Moreover, the administrator may only apply qualification determinations made after the close of the 18-month period in a prospective manner. 29 U.S.C. § 1056(d)(3)(H)(iv) (2012).

9

As Janice points out, effective March 7, 2007, the United States Department of Labor issued regulations regarding ERISA which clarify that no federal statute of limitations exists with respect to the filing of a QDRO. See 29 C.F.R. § 2530.206(c) (2014). In particular, 29 C.F.R. § 2530.206(c)(1) states that "a [DRO] shall not fail to be treated as a [QDRO] solely because of the time at which it is issued." As a result, "'[c]onceivably, such an order could be entered at any time after judgment.'" *Jordan v. Jordan*, 147 S.W.3d 255, 260 (Tenn. App. 2004). Janice relies upon these federal regulations to support her argument that she was not time barred from filing the necessary QDRO in this case.

A former spouse's right to receive pension benefits deemed marital property, however, does not arise under ERISA. That right or interest is based on a state court judgment ordered under state domestic relations law. Indeed, a "QDRO only renders enforceable an already-existing interest." *Tise*, 234 F.3d at 421. "'[T]he QDRO provisions of ERISA do not suggest that [the alternate payee] has no interest in the plan[ ] until she obtains a QDRO, they merely prevent her from enforcing that interest until the QDRO is obtained.' [Citations omitted.]" 234 F.3d at 421. As a result, in this case, while federal law did not provide a statute of limitation for the filing of a QDRO, Janice could only obtain a QDRO if she had a valid right or interest created under Kansas domestic relations law to enforce. Whether Janice had a valid right or interest in David's retirement accounts at the time she sought the QDRO is considered in the next section.

IS THE DIVISION OF RETIREMENT BENEFITS PROVIDED
IN A DIVORCE DECREE A JUDGMENT SUBJECT TO DORMANCY?

In the present case, although the divorce decree granted Janice an interest in David's retirement accounts, Janice waited almost 12 years to enforce her interest by attempting to file a QDRO. The Kansas dormancy statute, K.S.A. 2014 Supp. 60-2403, governs when a judgment becomes dormant and under what circumstances a judge must

10

release the judgment of record. "[A]ny judgment" of any court of record in this state is subject to dormancy. K.S.A. 2014 Supp. 60-2403(a)(1). Our legislature has statutorily defined a "judgment" as "the final determination of the parties' rights in an action." K.S.A. 2014 Supp. 60-254(a).

In *Bandel v. Pettibone*, 211 Kan. 672, 677, 508 P.2d 487 (1973), our Supreme Court elaborated upon the qualities of a judgment:

> "It is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, so that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. [Citations omitted.]"

"[P]ursuant to K.S.A. [2014 Supp.] 60-2403, judgments grow dormant in five years, if not enforced by execution, garnishment or proceeding in aid of execution; and, if not revived, as provided in K.S.A. 60-2404, such dormant judgments become absolutely extinguished and unenforceable two years thereafter." *Long v. Brooks*, 6 Kan. App. 2d 963, 966, 636 P.2d 242 (1981). More specifically, K.S.A. 2014 Supp. 60-2403(a)(1) provides in pertinent part:

> "Except as provided in subsection (b) or (d), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and

11

remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so."

Of course, dormant judgments may be revived under K.S.A. 60-2404 only "by a combination of (1) a motion for revivor, coupled with (2) a request for the immediate issuance of an execution, garnishment or attachment." *Long*, 6 Kan. App. 2d at 966. In this regard, "dormancy and revivor statutes are different than statutes of limitation and they demand strict compliance." *State v. Douglas*, 47 Kan. App. 2d 734, 741, 279 P.3d 133 (2012).

Because the dormancy statute "speaks of 'any judgment' of any court of record in this state[, t]he statute does not limit its application to a monetary judgment." *Plein*, 250 Kan. 701, Syl. ¶2. See *Plein*, 250 Kan. at 706 (the journal entry in the underlying divorce action, awarding a lien on real estate to one of the parties, was a judgment subject to dormancy); *In re Marriage of Moore*, No. 112,047, 2015 WL 5312023, at *3-5 (Kan. App. 2015) (unpublished opinion) (district court erred in its legal conclusion that the division of property—specifically the parties' retirement benefits—was not a judgment subject to dormancy, as the division of marital property is a final determination of the parties' interests in the marital estate); *In re Marriage of Lida*, No. 90,411, 2004 WL 719888, at *4-5 (Kan. App. 2004) (unpublished opinion) (because husband's actual property equalization obligation was yet to be determined, divorce court's journal entry did not constitute a final judgment), *rev. denied* 278 Kan. 845 (2004).

Moreover, despite Janice's assertion to the contrary, court-ordered transfers of retirement benefits are amenable to execution and, thus, they are not exempt from the dormancy statute. Although the divorce decree established Janice's right to receive a portion of David's retirement accounts, ERISA's anti-alienation provision preempts the divorce court's DRO because it does not comply with ERISA's requirements for QDROs. As a consequence, Janice was required to execute upon the judgment by filing a QDRO

12

in order to enforce her right to receive benefits under David's retirement accounts. As explained by the Tennessee Court of Appeals:

> "[T]he judgment of divorce 'create[d]' Wife's right to receive benefits under Husband's plan. *See generally* 29 U.S.C. § 1056(d)(3)(B)(i)(I). The proposed QDRO simply 'recognizes' that right. *See generally id.* However, until the plan administrator approves Wife's proposed QDRO, her right to receive benefits under Husband's plan, even though set forth in a validly-entered judgment of divorce, is not enforceable under ERISA. For example, Wife cannot simply send DuPont a certified copy of her judgment of divorce and successfully demand payment of 42% of Husband's benefits. This is because the judgment does not contain the ERISA-mandated information." *Jordan*, 147 S.W.3d at 261.

Similarly, this interplay between state court judgments dividing retirement accounts in divorce decrees and ERISA was noted by our court in *In re Marriage of Smith*, 2012 WL 1649835, at *1, 3-5. In that case, our court recognized that the filing of a QDRO is the federally mandated means for executing upon a division of retirement benefits. Based on that principle, our court applied Kansas dormancy law in affirming the district court's decision to deny a former spouse's motion to file a QDRO about 10 years after the filing of the divorce decree. 2012 WL 1649835, at *4-5.

In particular, our court in *In re Marriage of Smith* found the wife's delay in seeking to enforce the division had caused her rights to her ex-husband's retirement benefits to become extinguished:

> "To begin with, [wife] has cited no direct valid authority for the proposition that a QDRO is required before a judgment which divides a retirement account becomes final or enforceable. Nor are we aware of such. Under K.S.A. 60-254(a), a judgment is defined as the 'final determination of the rights of the parties in an action.' The decree here awarded to [wife] one-half of [husband]'s 401(k) account. That amounted to a final determination of her rights in that account. A QDRO is merely the ministerial avenue

13

through which she must travel in order to obtain what she was awarded. It would not provide her any more than what the decree awarded her. While a QDRO may have been required for [wife] to actually access the portion of [husband]'s account that she was awarded, that has nothing to do with whether the judgment that awarded her a portion of the account was final and enforceable.

. . . .

"We agree that the district court had the obligation to enter a QDRO in order to enforce the judgment had one been timely requested. The problem for [wife], however, is that she waited until the judgment had become dormant to request it. Again, all she needed to do if she desired to enforce the judgment before it became dormant was first to procure from the court an order requiring [husband] to cooperate in providing the information about the 401(k) account that was necessary in a QDRO. She then had only to obtain the court's signature on a QDRO that would divide the plan according to the decree and submit it to the administrator of [husband]'s 401(k) account. But once the dormancy exceeded the time within which it could be revived, she had nothing to enforce." 2012 WL 1649835, at *4-5.

We find *In re Marriage of Smith* is persuasive authority for the proposition that the division of a party's retirement account in a divorce decree constitutes a judgment subject to dormancy under K.S.A. 2014 Supp. 60-2403, when, as in this case, the division qualifies as a final determination of the parties' interests in the marital estate. Similar to the ex-wife in *In re Marriage of Smith*, Janice waited until after the district court's judgment dividing the parties' retirement benefits was extinguished by the dormancy statute before attempting to procure a QDRO. As a consequence, her almost 12-year delay left her without a judgment to enforce.

DOES K.S.A. 2014 SUPP. 60-2403(C) TOLL THE RUNNING OF
THE DORMANCY PERIOD UNTIL THE RETIREMENT ACCOUNTS BECOME PAYABLE?

K.S.A. 2014 Supp. 60-2403(c) provides: "The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited." In *Bank*

14

*IV Wichita v. Plein*, 250 Kan. 701, 707, 830 P.2d 29 (1992), our Supreme Court determined this subsection of the dormancy statute codified prior caselaw; specifically, *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, Syl. ¶ 4, 779 P.2d 442, *rev. denied* 245 Kan. 788 (1989). In that Court of Appeals case, we stated: "The time within which a judgment must be enforced to prevent it from becoming dormant does not run during any period in which it is impossible to collect the judgment by legal process." 13 Kan. App. 2d 678, Syl. ¶ 4; see also *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 648-49, 270 P.3d 1074 (2011) (Greene, J., dissenting: "not only a formal *judicial stay*—such as a bankruptcy filing— triggers such tolling [of the dormancy statute]; but tolling is also triggered if the judgment creditor is in any way 'prohibited' from enforcement by legal process"), *cert. denied* 133 S. Ct. 158 (2012).

Here, Janice asserts that under K.S.A. 2014 Supp. 60-2403(c), the almost 12 years which elapsed following the judgment which divided the retirement accounts are tolled for dormancy purposes because it was "impossible to collect" upon David's retirement accounts until he began receiving benefits. In other words, Janice predicates her tolling argument on her inability to *receive money* from David's plans rather than her inability to enforce her interest by *legal process*. See *Plein*, 250 Kan. at 707-08 (our Supreme Court's discussion of the tolling issue before it indicates that K.S.A. 2014 Supp. 60-2403(c) refers to the availability of the legal process for enforcing the judgment).

David counters, however, that Janice's inability to obtain monetary benefits from the retirement accounts is irrelevant because she was in no way "'stayed or prohibited'" by *legal process* from filing a QDRO to enforce her right to receive such benefits in the future.

While retirement plans generally provide that a beneficiary may not collect benefits until a qualifying event occurs, Janice could have enforced her interest in David's

15

retirement accounts at any time after the filing of the divorce decree because ERISA does not specify a timeframe for the filing of a QDRO. See 29 C.F.R. § 2530.206(c)(1). Indeed, had Janice timely filed a QDRO after the divorce, she would have obtained an interest in David's retirement plans equivalent to that of David's interest. Assuming Boeing's plan administrator determined that the DRO qualified as a QDRO, Boeing was required to recognize Janice, the person designated as an alternate payee under the QDRO, as a beneficiary under the retirement accounts. See 29 U.S.C. § 1056(d)(3)(J) (2012).

This designation by the plan administrator that Janice had executed on her interest in David's retirement plan would have been consequential. As explained by Elizabeth Barker Brandt in *Valuation, Allocation, and Distribution of Retirement Plans at Divorce: Where Are We*?, 35 Fam. L.Q. 469, 492 (2001):

> "The effect of the QDRO is to require the plan administrator to create a separate account within the pension plan for the alternate payee. This segregates the interests of the employed spouse and the alternate payee yet permits the alternate payee to obtain the advantage of passive growth and appreciation in the value of the pension plan."

Upon a plain reading of the dormancy statute, we hold that K.S.A. 2014 Supp. 60-2403(c) does not toll the running of the dormancy period for a judgment in a divorce decree which divides retirement plans governed by ERISA. We arrive at this conclusion because the legal process for enforcing such a judgment—the filing of a QDRO—is not stayed or prohibited until the benefits become payable. On the contrary, the filing of a QDRO is mandatory if the alternative beneficiary is to enforce his or her judgment. Although Janice may not have been able to *receive money* from David's retirement accounts during the ensuing 12 years, the necessary *legal process*—a QDRO—for enforcing Janice's interest in the retirement accounts was fully available to her.

In conclusion, we hold the district court did not err when it found the judgment dividing David's retirement accounts had become absolutely extinguished and unenforceable due to Janice's failure to file a QDRO or a renewal affidavit within 7 years of the filing of the divorce decree.

Affirmed.