NOT DESIGNATED FOR PUBLICATION

No. 120,342

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

VICKI J. POJE,
*Appellee*,

and

THOMAS J. POJE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; TIMOTHY L. DUPREE, judge. Opinion filed September 27, 2019. Reversed and remanded with directions.

*Stephen M. Turley*, of Wagle & Turley, LLC, of Wichita, for appellant.

No appearance by appellee.

Before ATCHESON, P.J., HILL and BUSER, JJ.

PER CURIAM: In Thomas and Vicki Poje's 2007 divorce, the court awarded Vicki part of Thomas' federal retirement benefits. Eleven years later, Thomas asked the court to declare the award void and unenforceable. He claimed that Vicki had failed to execute on the judgment by sending the federal Office of Personnel Management a "court order acceptable for processing" within the time allowed by the Kansas dormancy statute.

1

At the hearing on the matter, Vicki claimed that she did execute on the judgment because she sent the Office a copy of the divorce decree that divided the retirement benefit. She explained that a representative from the Office had told her to do so. The district court found for Vicki because, although Vicki did not take the correct action, she did take some action to execute on the judgment. Thomas appeals. Vicki has not responded to the appeal.

*A few more background facts are necessary to understand the context.*

Vicki and Thomas divorced in February 2007. The divorce decree granted Vicki 50 percent of Thomas' thrift savings account and 25 percent of Thomas' United States Postal Service retirement account. The decree stated that "the award of these moneys will be effectuated by qualified domestic relations orders to be prepared by [Vicki's] attorney." Earlier, a "Retirement Benefits Court Order" was filed awarding Vicki 50 percent of the thrift savings plan.

In May 2018, Thomas moved to declare the division of postal service retirement benefits void and unenforceable alleging that Vicki failed to execute on the judgment. At the motion hearing, both parties appeared pro se. At the time of the hearing, Thomas had not yet retired. Thomas testified he believed that Vicki had not filed the proper paperwork required by the Office to receive the federal employees' retirement funds. He had tried to contact the Office but had not heard back. He did not know whether she had filed the forms.

Vicki testified that she did not know she was supposed to file a "federal employee retirement system" document but admitted her attorney had left her some paperwork before he withdrew. After consulting Thomas, Vicki called the Office to see what they required and was told all the agency needed was a certified copy of the divorce decree. She testified she specifically asked if they needed a "FERS" document, and she was told

no. She sent the Office a certified copy of the divorce decree in 2007. Thomas confirmed that the Office did receive a copy of the divorce decree in 2007, and Vicki then received 50 percent of his thrift savings plan also with the postal service. The divorce decree was all that the postal service required for division of the thrift savings plan.

The court denied Thomas' motion because Vicki did act to execute on the judgment within the time frame required by the dormancy statute, even though she did not take the correct action. The court found both parties credible. Vicki's failure to take the appropriate action was not due to her willfulness or deliberate conduct. It was logical for her to believe that all she needed to do was send the divorce decree when that was all it took to get her share of the thrift savings plan from the same organization. And someone from the Office told her in 2007 that was all she needed to do.

The court considered the dormancy statute and *Larimore v. Larimore*, 52 Kan. App. 2d 31, Syl. ¶ 2, 362 P.3d 843 (2015), and *In re Marriage of Smith*, No. 105,365, 2012 WL 1649835, at *1, 4-5 (Kan. App. 2012) (unpublished opinion). The court noted that Vicki needed to take the appropriate action now to secure the judgment, which may be filing a qualified domestic relations order (QDRO).

*We must review some federal rules.*

The Office of Personnel Management is the federal agency that administers the federal employees' retirement system. 5 C.F.R. § 838.101(a)(1). Under the federal statute, the Office must pay a federal employee's retirement benefits to another person if and to the extent expressly provided for in the terms of "any court decree of divorce" after the Office receives *written notice of the decree and such additional information and documentation as the OPM may require*. 5 U.S.C. § 8467 (2016).

That specific additional information required by the Office is set out in a series of federal regulations. Federal regulations require that the Office receive a "court order acceptable for processing." 5 C.F.R. § 838.301. The court's instructions must be "specific and unambiguous." 5 C.F.R. § 838.101(a)(2). Pertinent here, any court order labeled as a "qualified domestic relations order" is not a court order acceptable for processing unless the order expressly refers to part 838 of title 5 of the Code of Federal Regulations. 5 C.F.R. § 838.302(a). In other words, the language of the specific order is important.

The regulations go on to provide more details. The court order must use enough terms to identify the retirement system and the employee annuity and expressly state that the former spouse is entitled to a portion of the employee annuity. 5 C.F.R. § 838.303. Examples of acceptable language identifying the retirement system include "Federal Government" benefits or benefits payable "based on service with the U.S. Department of Agriculture." 5 C.F.R. § 838.611. A court order using the language "retirement accounts," as opposed to "retirement benefits," may be used only to divide the amount of contributions the employee has paid into the Civil Service Retirement and Disability Fund. 5 C.F.R. § 838.612. A court order that awards a portion of an employee annuity as of a specified date awards the former spouse a pro rata share. 5 C.F.R. § 838.621(c). A court order acceptable for processing may be silent concerning whether the Office or the retiree is to pay the portion of the annuity awarded to the former spouse. 5 C.F.R. § 838.304(b)(3).

Here, paragraph 14 of the parties' divorce decree sets out the distribution of Thomas' federal assets:

> "That petitioner shall have set over to her fifty percent (50%) of the value of respondent's Thrift Savings account and twenty-five percent (25%) of respondent's USPS retirement account as [of] August 21, 2006. That the award of these moneys will be effectuated by qualified domestic relations orders to be prepared by petitioner's attorney."

4

The district court cited no federal regulation when making its finding that Vicki failed to take the correct action. Whether that finding is sufficient for federal purposes is not for us to decide. The issue for us is whether Vicki executed on the judgment under state law. Did she take any legally effective steps to keep this judgment from expiring through the passage of time? After all, the federal regulations acknowledge that it is for the state court to determine whether its court order dividing the federal retirement benefits remains valid. 5 C.F.R. § 838.101(a)(2); § 838.122(d); § 838.224.

*We review the law of judgment dormancy and reviver.*

To prevent a judgment from becoming "dormant," Kansas law requires that either a renewal affidavit be filed or an "execution" be issued within five years from the date of entry of any judgment by a court, subject to certain exceptions. When a judgment becomes dormant and remains dormant for two years, the district court must release the judgment upon request. If there is no renewal affidavit filed of record or some action taken to enforce the judgment, release of the judgment is required by the statute:

> "(a)(1) Except as provided in subsection (b), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so." K.S.A. 2018 Supp. 60-2403.

5

But there is a limit. The "time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited." K.S.A. 2018 Supp. 60-2403(c).

The statute defines execution as "a direction to an officer" to do some action. K.S.A. 2018 Supp. 60-2401(a). At the request of an interested person, executions shall be issued by the clerk and signed by a judge. K.S.A. 2018 Supp. 60-2401(b). It has long been the rule in Kansas that issuing an execution is an attempt to enforce the judgment. It is how a successful party may obtain the fruits of his or her judgment. *First Nat. Bank of Norton v. Harper*, 161 Kan. 536, 540-41, 169 P.2d 844 (1946).

*A divorce decree dividing retirement benefits is a judgment subject to the dormancy statutes.*

Several cases have dealt with the issue we have here. All of them found that judgments dividing pensions can become dormant and expire with the passage of time when the party seeking to enforce the judgment fails to take appropriate action to enforce that judgment.

In *Larimore*, this court held that a court's division of retirement accounts in a divorce decree is a judgment subject to dormancy under K.S.A. 2018 Supp. 60-2403 when it is a final determination of the parties' interests. If the retirement account is governed by the Employee Retirement Income Security Act, the party may execute on such a judgment by filing a QDRO with the retirement plan administrator. The court found that even though the retirement benefits were not yet payable because the husband had not yet retired, the running of the dormancy period was not tolled because the legal process for enforcing the judgment—the filing of a QDRO—was not stayed or prohibited until the benefits became payable. 52 Kan. App. 2d 31, Syl. ¶¶ 2-5.

6

In *Larimore*, each spouse was awarded 40 percent of the other spouse's retirement accounts in their divorce. Neither submitted a QDRO. Almost 12 years later, the husband sought to have the division of the retirement accounts be declared void and unenforceable. In response, the wife moved to compel preparation and execution of a QDRO. The wife argued she was unaware she needed to file a QDRO and "'thought everything was in place.'" 52 Kan. App. 2d at 34. The court held that the wife needed to execute on the judgment to enforce her right to receive the benefits by filing a QDRO within the time limits provided in the dormancy statute. 52 Kan. App. 2d at 41-42. The judgment dividing the retirement accounts became absolutely extinguished and unenforceable because of her failure to file a QDRO or a renewal affidavit within seven years. 52 Kan. App. 2d at 44.

Failure to file a QDRO or a renewal affidavit came into play in *In re Marriage of Porterfield*, No. 118,478, 2019 WL 847671 (Kan. App. 2019) (unpublished opinion). In *Porterfield*, the panel declined to depart from or distinguish *Larimore* when the wife claimed she reasonably relied on the husband's attorney's promise to file a QDRO. The divorce decree awarded the wife half of the husband's pension benefits. Nineteen years later, the wife filed a motion for entry of a QDRO. The wife admitted she knew a QDRO was required for her to receive her interest in the pension at the time of the divorce, but she believed her husband's divorce attorney, Steve Sickel, would file the QDRO. In support, she submitted a letter sent by her attorney to Sickel. The letter said that the attorneys agreed that Sickel would prepare the QDRO and the wife requested her portion in a lump sum. The wife believed Sickel had completed the QDRO. But 15 years later, the wife's attorney informed her that Sickel had never prepared the QDRO. According to the wife, the husband then agreed to sign a letter allowing her to get the benefits. But he never signed such a letter. At that time, the benefits were not yet payable because the husband had not yet retired.

On appeal, the *Porterfield* panel held that because the wife took "no action" to execute on the judgment for 19 years, she was left with no judgment to enforce. 2019 WL 847671, at *13.

Once again, in *In re Marriage of Smith*, No. 150,365, 2012 WL 1649835, at *1, 4-5 (Kan. App. 2012) (unpublished opinion), a panel of this court found that the judgment in a divorce decree awarding the wife half of the husband's 401(k) account was dormant and unenforceable when the wife waited 10 years to request a QDRO. There, the wife "never argued that she took any action as provided for under K.S.A. 60-2403 that would extend the life of the judgement." 2012 WL 1649835, at *5. To enforce the judgment, the wife needed only to obtain the court's signature on a QDRO that would divide the 401(k) plan according to the divorce decree and submit it to the administrator of the husband's 401(k) account. But she waited too long and there was nothing to enforce. 2012 WL 1649835, at *5.

These cases imply that a party who has a judgment dividing pension funds that are held by a third party must act to keep that judgment alive and enforceable. The various technical steps of securing appropriate division orders by the court and plan administrators do not arise from the dust. They are not issued automatically nor are they implied by circumstances.

It is the circumstances here that compel us to reverse. Vicki did not execute on the judgment within the time required by the dormancy statute. The district court even found that she did not take the correct action. Her subjective reliance on someone's response in her phone call to the Office is not enough to stop the dormancy and then the expiration of this judgment. She took no binding legal steps to enforce her judgment.

The court erred when it ruled to the contrary.

8

Reversed and remanded with directions to release the judgment.

* * *

ATCHESON, J., concurring: I concur in the result reversing the district court's denial of Thomas J. Poje's request for release of the judgment Vicki J. Poje obtained against his United States Postal Service retirement account when they divorced. I do so based on the spotty factual record the parties, who represented themselves, provided the district court and Vicki's failure to respond to the arguments Thomas asserted on appeal with the assistance of a lawyer. Nothing in the record suggests enforcement of the judgment may have been stayed or prohibited under K.S.A. 2018 Supp. 60-2403(c), and Vicki did not take any steps to renew or otherwise preserve the judgment after 2007. My concurrence, however, should not be taken as an endorsement of *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 362 P.3d 843 (2015).