NOT DESIGNATED FOR PUBLICATION

No. 124,529

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LISA MICHELLE SHAFER (nka Webster),
*Appellant*,

and

JON FRANCIS SHAFER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Opinion filed September 23, 2022. Reversed and remanded with directions.

*Bruce W. Beye*, of Overland Park, for appellant.

*Ronald W. Nelson*, of Ronald W. Nelson, PA, of Overland Park, and *Joseph A. DeWoskin*, of Kansas City, for appellee.


Before GREEN P.J., ISHERWOOD and COBLE, JJ.


PER CURIAM: Lisa Shaffer, now Lisa Webster, appeals the district court's denial of her motion seeking clarification of the decree it entered in 2006 following her divorce from her former husband, Jon Shaffer. Lisa contends the district court erroneously concluded that any such motions needed to be filed within one year of entry of its order, so the parties' divorce judgment was now dormant and the court was without jurisdiction to rule on Lisa's request. We agree that error occurred. Because the provision in the decree addressing the division of Jon's military retirement pay contained an incomplete

1

calculation mechanism, the order was not susceptible to enforcement and was therefore not subject to dormancy. The decision of the district court is reversed, and the matter remanded with directions to consider the merits of Lisa's motion for clarification.

FACTUAL AND PROCEDURAL BACKGROUND

Lisa and Jon Shafer divorced in 2005 after roughly 13 years of marriage. The district court filed its divorce decree in 2006 which included a division of assets and liabilities. According to that order, Lisa would receive a share of Jon's Army Reserve and National Guard retirement pay, equal to "50% of months of marriage divided by the total months in the Reserves [and Guard]." The precise length of the parties' marriage was not readily discernible from either the decree or the division of assets.

Jon retired from the service around 15 years after the divorce was finalized. Lisa contacted the Defense Financial Accounting Services office (DFAS) soon afterward intending to collect her assigned share of Jon's retirement pay. She provided the office with copies of the decree along with the court's division of assets, but her request was denied because neither document identified the length of time, in months, that the parties were married. According to DFAS, given the language of the documentation, it could not breathe life into the court's order until that number was known.

Lisa returned to the district court and filed a motion for clarification requesting that the court refine its earlier order by identifying the number of months the parties were married in order to effectuate its intent for Lisa to receive a precise portion of Jon's retirement pay. The court conducted a hearing on the motion at which time Jon countered Lisa's request with the assertion that K.S.A. 2020 Supp. 60-260 prohibited her from seeking enforcement of the court's 15-year-old order. The court found Jon's argument persuasive and denied Lisa's motion because K.S.A. 2020 Supp. 60-260(b) required her to bring her request within one year of entry of the judgment. It advised Lisa that while it

2

empathized with her plight, it nevertheless lacked "any legal basis, given the significant lapse in time during which no action was taken, to amend, alter, or modify its prior judgment."

Lisa now brings the matter before us to resolve whether the district court reached its conclusion in error.

ANALYSIS

THE DISTRICT COURT ERRED WHEN IT HELD THE KANSAS DORMANCY STATUTE PROHIBITED IT FROM CLARIFYING THE PARTIES' DIVORCE DECREE

Whether a district court's order is a final judgment is a legal question we review de novo. *In re Marriage of Doud and Modrcin*, 59 Kan. App. 2d 244, 251, 480 P.3d 800 (2020). Resolution of this question requires an analysis of whether the order at issue "finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Plains Petroleum Co. v. First Nat. Bank of Lamar*, 274 Kan. 74, Syl. ¶ 4, 49 P.3d 432 (2002). The format of the court's judgment should reflect its decision with a reasonable degree of clarity so the parties can "ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement." *Bandel v. Bandel*, 211 Kan. 672, Syl. ¶ 3, 508 P.2d 487 (1973).

Lisa essentially argues that because she did not request a modification of the material terms of the divorce decree, but merely sought clarification of the language the court employed in its original decree so that provision would be workable, then K.S.A. 2020 Supp. 60-260(b) provided the district court with an avenue by which to lawfully grant her request. By contrast, to allow the specific number of months the parties were married to remain an unknown would consistently frustrate the district court's intention because DFAS would continually be unable to release the funds.

3

K.S.A. 2020 Supp. 60-260(b) and (c) state:

"(b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

. . . .

(6) any other reason that justifies relief.

"(c) . . . A motion under subsection (b) must be made within a reasonable time, and for reasons under paragraphs (b)(1), (2) and (3) no more than one year after the entry of the judgment or order, or the date of the proceeding."

Subsection (b)(6) vests a trial court with broad discretionary power to relieve a party from a final judgment for any reason that justifies such relief as long as discretion is exercised within a reasonable time. "[W]here relief is sought because of facts existing at the time of the decree which, if known to the court, would have brought about a different result, relief is available under K.S.A. 60-260(b)." *In re Marriage of Hunt*, 10 Kan. App. 2d 254, 259, 697 P.2d 80 (1985). The rule is meant to nurture the legal objective of deciding cases on their merits and must be given a liberal construction to prevent miscarriage of justice. *Wichita City Teachers Credit Union v. Rider*, 203 Kan. 552, 555, 456 P.2d 42 (1969).

This court was asked to consider an issue strikingly similar to Lisa's in *In re Marriage of Purdie*, No. 106,055, 2012 WL 924853 (Kan. App. 2012) (unpublished opinion). In that case, Colon and Wendy Purdie were married from 1988 to 2003 and throughout their entire union Colon served in the United States Army. The final divorce decree filed by the district court determined that "'[a]ll contributions made to Petitioner's [Colon's] retirement account between March 4, 1988, and May 19, 2003, shall be split

4

equally between the parties or as allowed by military law.'" 2012 WL 924853, at *1. It was undisputed that Colon needed to fulfill 20 years of military service before he would be eligible to receive payments from the account.

When Wendy sought to collect Colon's retirement pay at the appropriate point in time, however, much like Lisa experienced here, Wendy was informed that the language in the parties' divorce decree was not sufficient and the district court must first insert the requisite language before she could receive any distributions. Like Lisa, Wendy promptly filed a motion with the district court essentially seeking to add the specific equation to the divorce decree that would give effect to its original order. The district court granted the motion over Colon's objection.

Colon brought his dissatisfaction to this court and argued that insertion of Wendy's requested language constituted an impermissible and untimely amendment of the divorce decree, given that it was filed well after one year of the final decree. Much like this case, Wendy countered that the matter prompting the need for clarification was not yet known to the parties. A panel of this court rejected Colon's argument, and properly so. It concluded that because Wendy sought to gain nothing more than clarity for the original order and did so promptly after learning of the inadequacies in that decree, the district court did not abuse its discretion in granting Wendy's request through the operation of K.S.A. 60-260(b). 2012 WL 924853, at *2-3.

Although more of an analogue than a case in the same vein, we also derive a measure of guidance from *In re Marriage of Lida*, No. 90,411, 2004 WL 719888 (Kan. App. 2004) (unpublished opinion). In that case, Bonnie and Robert Lida divorced in 1994 and when the divorce decree was filed, the precise property equalization sum was not capable of calculation. Thus, the court ordered Robert to make monthly payments to Bonnie in the amount of $1,000 until the equalization was established. Things did not go according to plan. Robert's diligence in honoring the monthly payments trickled off after

three years and the equalization process stalled despite Bonnie's persistent efforts throughout the years to finalize the matter.

In November 2001, seven years after the finalization of the parties' divorce, Bonnie filed a motion seeking a final determination of what Robert owed and a formal judgment for the same. Robert responded that because Bonnie did not seek to compel enforcement of the decree at any point during the preceding seven years, the judgment should be declared dormant. Bonnie countered that the dormancy statute was inapplicable because the court never entered a specific enforceable final judgment. The district court agreed and awarded Bonnie a judgment of $52,391.87. Robert pursued an appeal to this court, and the judgment of the district court was affirmed. 2004 WL 719888, at *2, 5. The panel found the provision at issue from the decree "did not articulate the precise obligations of the parties," but "merely put Robert on notice that he would owe some amount to Bonnie to equalize the property division," therefore the dormancy statute was inapplicable. 2004 WL 719888, at *4-5.

Jon contends this case is better suited for an analysis which mirrors that undertaken in *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 362 P.3d 843 (2015). When Janice and David Larimore divorced, they agreed to split David's government retirement account, but neglected to file a qualified domestic relations order (QDRO)— the approved method for retirement accounts governed by the federal Employee Retirement Income Security Act of 1974 (ERISA). Roughly 12 years later, Janice requested that the district court enter a QDRO and David responded the judgment was dormant. The district court denied Janice's motion and she pursued an appeal.

A panel of this court affirmed finding that the divorce decree amounted not only to a final determination of Janice's rights in David's retirement account, but also a final judgment subject to dormancy under K.S.A. 2014 Supp. 60-2403. 52 Kan. App. 2d at 44. See *Bandell*, 211 Kan. at 677 (A final judgment is "complete and certain in itself" and "is

6

susceptible of enforcement in the manner provided by law."). Any final judgment of any court grows dormant in five years, if not enforced by execution, garnishment, or proceeding in aid of execution; it is not enforceable in perpetuity. K.S.A. 2021 Supp 60-2403(a)(1). A party can endeavor to revive a dormant judgment, i.e., make it enforceable once more, by diligently following the path laid out at K.S.A. 2021 Supp. 60-2403 and K.S.A. 60-2404 for accomplishing that task. Yet that action must be taken within two years after the judgment has fallen into dormancy. K.S.A. 2021 Supp. 60-2403(a)(1) mandates the release of judgments that are dormant for two years, which has the effect of rendering those judgments "absolutely extinguished and unenforceable." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 1, 815 P.2d 97 (1991).

*Larimore* contemplates a particularized, two-part situation in which a divorce judgment establishes a spouse's right to receive benefits under their partner's ERISA retirement plan. The mandated QDRO essentially recognizes that right. Because of ERISA's exacting requirements, Janice's right to receive benefits under David's plan was not enforceable until the administrator of his retirement plan approved Janice's QDRO. *Larimore*, 52 Kan. App. 2d at 41 (quoting *Jordan v. Jordan*, 147 S.W. 3d 255, 261 [Tenn. App. 2004]). In situations like *Larimore* that involve ERISA pension plans, entry of the divorce decree alone cannot by itself accomplish the distribution awarded by the court. So, Janice's QDRO was the key that would allow her access to the portion of David's account that the court awarded her. Stated another way, it is the manner of enforcement of the divorce decree provided by law. Janice's efforts fell short because she needed to take the affirmative step to execute the district court's final judgment in the parties' divorce by filing a QDRO in order to trigger enforcement of her right to receive benefits under David's retirement accounts. *Larimore*, 52 Kan. App. 2d at 41. Her failure to take any steps toward execution for nearly 12 years left her without a judgment to enforce. See also *In re Marriage of Smith*, No. 105,365, 2012 WL 1649835, at *4-5 (Kan. App. 2012) (unpublished opinion) (The district court's decision to deny a former spouse's motion to file a QDRO about 10 years after the filing of the divorce decree was affirmed

where the filing of a QDRO is the federally mandated means for executing upon a division of retirement benefits.).

The issue Lisa brought to us for resolution falls in line with *Purdie* and *Lida* because she merely requested clarification of a self-contained order. As drafted, the parties' divorce decree lacked information critical to its enforcement. Thus, it did not "finally decide[ ] and dispose[ ] of the entire merits of the controversy." *Plains Petroleum Co.*, 274 Kan. 74, Syl. ¶ 4. The district court erred in classifying the decree as a final judgment subject to dormancy and that it was without jurisdiction to rule on Lisa's motion. Lisa is entitled to a hearing where the merits of her claim can be afforded proper consideration.

### JON IS NOT ENTITLED TO ATTORNEY FEES

Jon claims he is entitled to attorney fees because "the issues in this case have been decided numerous times in the past decade in both published and unpublished appellate court decisions." The district court did not award attorney fees.

Appellate courts may award attorney fees for services on appeal when the district court had authority to award attorney fees. *In re Marriage of Nelson*, 58 Kan. App. 2d 920, Syl. ¶ 10, 475 P.3d 1284 (2020). In domestic relations actions, courts may award attorney fees as justice and equity require. K.S.A. 2021 Supp. 23-2715. Jon argues that payment of his attorney fees is warranted under Kansas Supreme Court Rule 7.07(c) (Kan. S. Ct. R. at 52), which allows the court to award fees when the issues raised on appeal are frivolous. But when the appellant prevails on all the relevant issues in an appeal, typically an award of attorney fees to the appellee is not appropriate. See *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 942, 381 P.3d 490 (2016).

As reflected by our research and reasoning above, Lisa prevails on the issue she raised on appeal. Thus, Jon's request for the attorney fees expended to respond to a purportedly frivolous appeal is denied.

Reversed and remanded with directions.