NOT DESIGNATED FOR PUBLICATION

No. 124,116

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JON HOLLIDAY,
*Appellant*,

and

TAMARA HOLLIDAY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Jackson District Court; CHRISTOPHER T. ETZEL, judge. Opinion filed September 23, 2022. Reversed.

*Shawna R. Miller*, of Miller Law Office, LLC, of Holton, for appellant.

*Cecilia T. Mariani*, of Topeka, for appellee.

Before HILL, P.J., COBLE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM:  The law seldom rewards idleness. In this appeal, we must decide whether a judgment in a divorce decree that divides a retirement account can become dormant and expire with the passage of time. Our research leads us to conclude that it can.

*A divorce was granted years ago.*

After 24 years of marriage, Jon Holliday and Tamara Holliday divorced in 2009. At the time of the divorce, Jon was employed by U.S.D. No. 336 and enrolled in the Kansas Public Employees Retirement System (KPERS). The divorce decree awarded Tamara half of Jon's retirement account. The decree stated: "The petitioner's KPERS retirement account shall be divided equally between the parties, with the valuation date to be the date the divorce petition was filed herein. A QDRO shall be prepared by respondent [Tamara] to effectuate this division within 60 days of the filing of this MEMORANDUM DECISION." Tamara never filed a QDRO (qualified domestic relations order).

Twelve years later, in 2021, when Jon was contemplating retirement, he moved to extinguish the judgment awarding Tamara half of the KPERS account because she never filed a QDRO or a judgment renewal affidavit. For authority he relies on K.S.A. 60-2403 and *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 362 P.3d 843 (2015). After receiving Jon's motion, Tamara mailed a copy of the divorce decree to KPERS.

At the court's hearing on Jon's motion, Kathleen Billings, a staff attorney for KPERS, testified. She said that because KPERS is a government pension plan exempt from the Employment Retirement Income Security Act, commonly known as ERISA, the KPERS administrators did not need a QDRO to divide a KPERS account. All the system needs is a sufficiently clear divorce decree dividing the KPERS benefits. This means at least a decree setting the percentage of the division of the account and the valuation date. Billings concluded that the divorce decree here was sufficiently clear and that KPERS could treat this decree as a QDRO and split Jon's retirement account accordingly. In this decree, the court had set the valuation date as the date the divorce was filed and the account was to be divided evenly.

2

According to Billings, when KPERS receives a QDRO or a divorce decree dividing a KPERS account, it operates as a lien on the account until the member either withdraws from the system, dies, or retires. Nothing changes in the account. She testified Jon had not yet applied for retirement, so Tamara was not yet entitled to anything. When he retired, she would be entitled to a one-time lump-sum payment for her portion of the account, based on the division set out in the divorce decree.

After hearing this, the court denied Jon's motion to extinguish the judgment. The court ruled that because the divorce decree was filed within seven years of the judgment and no QDRO was required by KPERS, the judgment was preserved. The court distinguished *Larimore* because that case involved a retirement plan governed by ERISA, which strictly requires parties to file a QDRO.

Jon asked the court to reconsider, arguing that Tamara had to deliver the divorce decree to KPERS within the seven years to preserve her judgment. The court ruled that it is the filing of the QDRO—or here, the divorce decree—with the court that preserves the judgment. The court stated it found no caselaw to support the premise that a QDRO must be delivered to a plan administrator to preserve a judgment.

*Unless some action is taken, with the passage of time, judgments can become dormant and expire.*

Generally, to prevent a judgment from becoming dormant, Kansas law requires that either a renewal affidavit be filed or an "execution" be issued within five years from the date of entry of any judgment by a court—subject to certain exceptions that do not apply here. After a judgment becomes dormant and remains dormant for two years, the district court must release the judgment upon request if no action is taken to revive the judgment. The statute applies to all types of judgments and parties, and directs a court to release the judgment if actions are not taken:

"(a)(1) Except as provided in subsection (b), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so." K.S.A. 2021 Supp. 60-2403(a)(1).

In short, a judgment remains active for five years. If nothing is done with it, it becomes dormant. Once it is dormant for two years and nothing is done to revive it, the judgment debtor can seek its release. The judge has no option and must release the judgment if the conditions are satisfied.

But there is an exception noted in subsection (c). The "time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited." K.S.A. 2021 Supp. 60-2403(c). We do not see that this law helps Tamara since she did nothing with this judgment for 12 years, and there is nothing in the record showing that the judgment was stayed or prohibited in some way.

Generally, an execution is "a direction to an officer" to do some action in regard to a judgment debtor's property. See K.S.A. 2021 Supp. 60-2401(a). The issuing of an execution is an attempt to enforce the judgment. It is how a successful party may obtain the fruits of their judgment. *First Nat. Bank of Norton v. Harper*, 161 Kan. 536, 540-41, 169 P.2d 844 (1946).

4

*Judgments in a divorce decree dividing retirement accounts can become dormant.*

We agree with the reasoning and the holding of the panel in *Larimore*, 52 Kan. App. 2d 31, Syl. ¶ 2. A division of retirement benefits in a divorce decree is a judgment subject to dormancy under K.S.A. 2021 Supp. 60-2403 when it is a final determination of the parties' interests. The *Larimore* panel dealt with a retirement account governed by ERISA.

If a retirement account is governed by ERISA, the party may execute on such a judgment "by filing a qualified domestic relations order with the retirement plan administrator." 52 Kan. App. 2d 31, Syl. ¶ 3. In other words, a qualified domestic relations order is a form of execution on a judgment. We regard that reasoning to apply to this case.

But KPERS retirement accounts are not governed by ERISA. KPERS benefits "are subject to claims of an alternate payee under a qualified domestic relations order" as those terms are defined by 26 U.S.C. § 414(p) (2018) of the federal Internal Revenue Code. K.S.A. 74-4923(b). KPERS "is subject to orders" from divorce proceedings issued by a district court. "[S]uch orders from such actions shall specify either a specific amount or specific percentage of the amount of the pension or benefit or any accumulated contributions due and owing from the system to be distributed by the system." K.S.A. 74-4923(b).

In *Larimore*, each spouse was awarded 40 percent of the other spouse's retirement accounts in their divorce decree. Neither submitted a QDRO. Almost 12 years later, the husband moved the court to declare the division of the retirement accounts void and unenforceable. The wife argued she was unaware she needed to file a QDRO and "thought everything was in place." 52 Kan. App. 2d at 34. The court held that the wife needed to execute on the judgment to enforce her right to receive the benefits by filing a

QDRO within the time limits provided in the dormancy statute. 52 Kan. App. 2d at 41-42. In other words, she had seven years after the date of the judgment to file the QDRO. Thus, the judgment dividing the retirement accounts became extinguished and unenforceable due to her failure to file a QDRO or a renewal affidavit within seven years. 52 Kan. App. 2d at 44.

The *Larimore* court reasoned that although the divorce decree established the wife's right to receive a portion of her husband's retirement account, the divorce decree could not effectuate an execution on that judgment. Simply put, the decree did not comply with ERISA's requirements for QDROs. The wife "'cannot simply send [the plan administrator] a certified copy of her judgment of divorce to successfully demand payment'" of her share of husband's retirement benefits. 52 Kan. App. 2d at 41. Rather, the wife had to file a QDRO to execute upon her judgment. The "filing of a QDRO is the federally mandated means for executing upon a division of retirement benefits." 52 Kan. App. 2d at 41.

The *Larimore* court also held that even though the retirement benefits were not yet payable because the husband was not yet retired, the running of the dormancy period was not tolled because the *legal process* for enforcing the judgment—the filing of a QDRO for a retirement account governed by ERISA—was not "stayed or prohibited" until the benefits became payable. 52 Kan. App. 2d 31, Syl. ¶ 5.

The *Larimore* decision is not binding here, but it is instructive. As Billings testified:  A party may simply send KPERS a copy of the divorce decree to effect a division of a KPERS account and no separate account is created for the party awarded a portion of their ex-spouse's KPERS benefits.

Before *Larimore,* another panel of our court has stated that part of executing on a judgment was sending the QDRO to the plan administrator. The panel of this court stated

6

the wife in that case "had only to obtain the court's signature on a QDRO that would divide the plan according to the decree and submit it to the administrator of [husband's] 401(k) account. But once the dormancy exceeded the time within which it could be revived, she had nothing to enforce." *In re Marriage of Smith*, No. 105,365, 2012 WL 1649835, at *5 (Kan. App. 2012) (unpublished opinion).

The legal principle that arises from the holdings in *Larrimore* and *Smith* is that some action must be taken to enforce a judgment dividing a retirement account to prevent dormancy of that judgment. In those two cases—both governed by ERISA—signing and filing a QDRO was the execution needed to keep those judgments alive.

A similar issue exists here. On a judgment not governed by ERISA, what action needs to be taken to prevent a judgment dividing a retirement account from becoming dormant and eventually expiring? Basically, how is a party to "execute" on such a judgment? We hold that Tamara needed to notify KPERS of the judgment dividing Jon's retirement account by sending KPERS a copy of the divorce decree.

The Kansas statute on writs of execution distinguishes "general" and "special" executions. A general execution "is a direction to an officer to seize any nonexempt property of a judgment debtor and cause it to be sold in satisfaction of the judgment." K.S.A. 2021 Supp. 60-2401(a). In other words, officers find the debtors' nonexempt property, seize it, sell it, and pay it into court. A special execution "is a direction to an officer to effect some action with regard to specified property as the court determines necessary in adjudicating the rights of parties to an action." K.S.A. 2021 Supp. 60-2401(a). In other words, "Officer, go seize the debtor's car and tow it to my shop."

The law also specifies that executions "shall be by personal service." K.S.A. 2021 Supp. 60-2401(a). "At the request of any interested person, executions and orders of sale

shall be issued by the clerk and signed by a judge. Such executions and orders shall be directed to the appropriate officers of the counties where such executions and orders are to be levied." K.S.A. 2021 Supp. 60-2401(b).

Common sense tells us that if the KPERS administrators never receive a divorce decree, then they would never know to divide the retirement account and Tamara would receive nothing. Thus, enforcement of this judgment inherently requires delivery of the divorce decree or some court order to KPERS. Service of a divorce decree on a retirement plan is not automatic.

The district court focused on the date the divorce decree was filed. It said:

"[T]he Decree of Divorce and Memorandum Decision was filed within 7 years of the Judgment. Such was filed on July 30, 2009. It is considered to be, and accepted as a QDRO by KPERS. Therefore, a QDRO was timely filed and the Respondent's rights to receive her portion of the retirement benefits has been preserved. Petitioner's Motion to Extinguish Judgement [*sic*] is denied."

We do not agree with the district court's reasoning.

According to K.S.A. 2021 Supp. 60-258, no judgment is effective unless a journal entry or judgment form is signed by the judge and filed with the clerk. This means when the divorce decree was filed here—July 30, 2009—the court's judgment became effective. Filing the decree did not turn it into a QDRO. At that point it was a final judgment dividing a retirement account in a divorce case and was subject to the rules of dormancy. Until some notice of the judgment was given to KPERS, there has been no execution made on this judgment. We hold that the notification to KPERS of a judgment dividing a KPERS retirement account is a form of execution on that judgment. With no execution, the judgment can become dormant and then subject to expiration.

8

We must reverse the ruling of the district court. After taking no action for 12 years, Tamara's judgment had expired.

Reversed.